ANNIE CARINI *vs.* ROMAN CATHOLIC BISHOP OF SPRINGFIELD.

Worcester.    September 28, 1914. — October 24, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* In making unfit appointment, Proximate cause.  *Actionable Tort. Proximate Cause.  Corporation,* Sole.

A declaration in an action of tort against a Roman Catholic Bishop as a corporation sole states no cause of action, if it alleges that the defendant appointed as a parish priest a man who, as he knew or by the exercise of reasonable care ought to have known, was of bad character and of gross sexual proclivities and would be likely to attempt successfully to debauch the female members of the parish, and that this priest by reason of the opportunity given him by his appointment dragged the plaintiff from the altar to the vestry of the church and there committed a rape upon her; because, even if the alleged negligence of the defendant in appointing such an unfit person could be regarded as the proximate cause of a crime committed by him of his own volition entirely outside the scope of his duties, yet it does not appear by the averments of the declaration that the defendant was at all chargeable with negligence toward the plaintiff in failing to foresee that the man appointed parish priest would commit a rape, especially under the circumstances of sacrilege alleged.

A girl cannot maintain an action of tort against a defendant, whose alleged negligence caused the plaintiff when about eighteen years of age to be seduced and debauched by a third person through successful persuasion; because the plaintiff, by whatever stress of temptation she was impelled, shared in the commission of the wrongful acts alleged to have been caused by the defendant's negligence.

SHELDON, J.  The plaintiff in each of the four counts of her declaration seeks to hold the defendant, as a corporation sole, on the ground that he appointed as his agent to take charge of a parish of the Roman Catholic Church in Milford, to care for the property of the defendant in that parish and to perform the pastoral and religious duties of a priest therein, one Petrarca, a man who, it is averred, was "of low moral character, . . . of vicious and degenerate tendencies and gross sexual proclivities."  She avers that the defendant made this appointment with full knowledge of the bad character and evil tendencies of Petrarca, and knew or in the exercise of reasonable care ought to have known that the appointment of such a man to such a position was dangerous and likely to result in attempts of said Petrarca "to debauch and carnally know the female members of said parish, and

that by reason of such confidential relations between such agent and priest and such members of the parish, such attempts would be successful." She avers that while she was a member of the parish, "not quite eighteen years of age, innocent and confiding," and while she was engaged alone "in the act of a religious service in the church of the Sacred Heart parish, said church being the property of the defendant," Petrarca, being the agent of the defendant and "occupying the position of the defendant's moral and religious instructor to the people of said parish, guarding the morals of the young of said parish, and sustaining said confidential relations with the members thereof," dragged her from the altar to the vestry of said church, assaulted and overcame and debauched her, in consequence whereof she afterwards gave birth to a child. And she avers that all her injuries and sufferings resulted from and were caused by the defendant's negligent appointment of said Petrarca as his agent and priest in said parish.

We have summarized what are contended to be the material averments of the first count; but with one exception, hereafter to be spoken of, we find nothing upon which to base any important distinction between this and the other counts. The case comes before us upon demurrer to this declaration.*

The gravamen of the plaintiff's charge is that the defendant negligently put or retained in the position of a parish priest one whom he knew or in the exercise of proper care ought to have known to be a man of bad character and of gross sexual proclivities, who he knew or ought to have known would be likely to attempt successfully to debauch the female members of the parish; and that this man committed upon the plaintiff what must upon the language of her declaration be taken to have been a rape. In other words, her claim is that the defendant appointed an unfit man; that this appointment was apt to give and did give to the appointee opportunities to seduce women; and that the appointee, by means of these opportunities, committed a rape upon the plaintiff.

It would be difficult for the plaintiff in any event to maintain such an action. Upon elementary principles she could not do so

---

* By the plaintiff's appeal from a judgment for the defendant ordered by *Pierce*, J., who sustained the demurrer.

without proving that the negligence of the defendant in appointing or retaining an unfit man was the direct and proximate cause of the injury which resulted to her. But according to her allegations the injury to her was done by Petrarca entirely outside the scope of his alleged agency or of his duties; it was a crime committed of his own free will, the result of his own volition, for which no one but himself was responsible. The criminal act of the alleged agent was itself the efficient cause of the plaintiff's injury. But the general rule of law is, as stated in *Stone* v. *Boston & Albany Railroad,* 171 Mass. 536, 540, "that where an intelligent and responsible human being has intervened between the original cause and the resulting damage, the law will not look beyond him." So it was said in *Glynn* v. *Central Railroad,* 175 Mass. 510, 511, that "ordinarily even a wrongdoer would not be bound to anticipate a wilful wrong by a third person." The principle was carried further in *Daniels* v. *New York, New Haven, & Hartford Railroad,* 183 Mass. 393, in which it was sought to hold the defendant liable for the death of a man who had been injured by its negligence, and who soon afterwards committed suicide while his mind was disordered in consequence of his injuries. It was held that the defendant was not liable for the death, because the proximate cause of that was not the defendant's negligence and the resultant injury to the deceased, but his own act of suicide. The same principle was applied in the recent case of *Horan* v. *Watertown,* 217 Mass. 185, in which it was held that the defendant town, although by its negligence it had afforded opportunity for the commission of certain crimes by third persons, could not be taken to have anticipated that such crimes would be committed, and so was not responsible for the injurious consequences which resulted therefrom to the plaintiff.

But however that may be, we cannot find that any ground of liability is stated in this declaration. It is true, as was stated in *Horan* v. *Watertown, ubi supra,* that where a defendant's original negligence is followed by the independent act of third persons (not amounting to a crime such as is charged in the case at bar), and such new act directly results in injury to a plaintiff, "the defendant's earlier negligence may be found to be the direct and proximate cause of those injurious consequences, if according to human experience and in the natural and ordinary course of events

the defendant ought to have seen that the intervening act was likely to happen." Even if we should extend this doctrine to cover cases where the intervening act of another was an atrocious crime, yet it does not appear by the averments of this declaration that the defendant had any reason to foresee, or was at all chargeable with negligence for failing to foresee, that Petrarca would commit a rape, especially with the circumstances of sacrilege which here are charged. It is not "according to human experience and in the natural and ordinary course of events" that a parish priest should commit so flagitious and atrocious a crime and expose himself undoubtedly to the discipline of his church as well as to the bitter penalty of the civil law (R. L. c. 207, § 22), even though he might be a man of low moral character, of vicious and degenerate tendencies, and of gross sexual proclivities. Upon the plaintiff's averments the defendant had no reason to apprehend that Petrarca would do more than to seek to seduce the women of his parish into acts of adultery or fornication; and flagitious as such acts would be, they could afford no ground of action to a woman who, under whatever stress of temptation, had shared in their commission. *Dennis* v. *Clark*, 2 Cush. 347, 350. The facts averred in the case at bar are more favorable to the defendant than those which were considered in *Henderson* v. *Dade Coal Co.* 100 Ga. 568.

The fourth count contains the additional averment that the defendant knew that Petrarca was often under the influence of liquor, and that while under that influence his lusts were ungovernable. But that is immaterial; for it is not averred or intimated that when he committed this crime he was at all under the influence of liquor.

It is not necessary to consider in detail the other assigned causes of demurrer.

For the reason that no one of the counts of the declaration states any cause of action against the defendant, the order of the Superior Court sustaining the demurrer and the judgment for the defendant must both be affirmed.

*So ordered.*

*M. T. Flaherty*, for the plaintiff.
*H. Parker*, for the defendant.