## LULA SMOTHERS, Appellant, v. WELCH & COMPANY HOUSE FURNISHING COMPANY.

Division One, July 30, 1925.

1. **MASTER AND SERVANT: Assault upon Customer: Respondeat Superior.** A merchant who neither connives at nor ratifies the act of his servant in assaulting a customer in his store in pursuance of his own purposes alone, is not liable in damages to the customer for the tort. The master is liable vicariously under the rule of *respondeat superior* only where the injury to the customer is occasioned by the negligence or misconduct of the servant while acting within the scope of his employment. If the clerk in assaulting the customer was not acting within the scope of his employment or in furtherance of his master's business or to accomplish the purposes of the master, but on the contrary was pursuing his own ends for his own purposes, his master is not liable to the customer for the assault.

2. ———: ———: **Care in Choosing Servants.** A merchant owes to his customer, who comes upon his premises by invitation, the duty of using ordinary care to employ competent and law-abiding servants, but he is not an insurer of the customer's personal safety; and if he complies with this duty, he is not liable in damages for

an assault by the servant upon a customer made outside the scope of his employment and in pursuit of his own evil desires, and which the master neither connives at nor ratifies.

Corpus Juris-Cyc. References: **Master and Servant**, 39 C. J., Section 1469, p. 1280, n. 48; Section 1490, p. 1295, n. 91; Section 1506, p. 1307, n. 15.

Appeal from St. Louis City Circuit Court.—*Hon. Charles B. Davis,* Judge.

AFFIRMED.

*Vaughn & Garner* for appellant.

The court erred in sustaining respondent's demurrer filed at the close of appellant's case, and also in overruling appellant's motion to set aside the involuntary nonsuit.   Hoehl v. Wabash Railway, 119 Mo. 325; 6 Cyc. 600; 26 Cyc. 152; Noland v. Morris & Co., 248 S. W. 627; Hunter v. Rys. Co., 248 S. W. 998; Bowles v. Payne, 251 S. W. 101; Folder v. Nugent Dry Goods Co., 251 S. W. 138; Glassman v. Harry, 170 S. W. 403; Dwinella v. Ry. Co., 120 N. Y. 117, 8 L. R. A. 224; Hellriegel v. Dunham, 192 Mo. App. 43; Quinn v. Powers, 87 N. Y. 535, 41 Am. Rep. 392; Williams v. Koehler, 41 N. Y. App. Div. 426, 58 N. Y. Supp. 863; Sturgis v. Rys. Co., 228 S. W. 861.

*Jones, Hocker, Sullivan & Angert* for respondent.

A master is not liable for an assault committed by a servant, not in the interest of the master's business, but for the servant's own purposes.   Haehl v. Wabash Ry. Co., 119 Mo. 325; Hellriegel v. Dunham, 192 Mo. App. 43; Sturgis v. Ry. Co., 228 S. W. 861; Glassman v. Harry, 182 Mo. App. 304; Whiteaker v. Ry. Co., 252 Mo. 438; Wolf v. Terminal Railway, 282 Mo. 559.

RAGLAND, P. J.—As appellant has made no effort to comply with our Rule 15, which requires that she make

"a fair and concise statement of the facts of the case without reiteration, statements of law, or argument," we adopt the statement made by respondent. It follows:

"This is a suit for damages instituted by the plaintiff, a married colored woman, against the defendant in the Circuit Court of the City of St. Louis, Missouri. The plaintiff's petition alleges that on the 29th day of November, 1921, she was at a furniture store conducted by the defendant at 1109 Olive Street, in the city of St. Louis, for the purpose of buying some furniture; that the defendant detailed one Lou Kamine, one of its agents and servants, to wait upon her in the purchase of a davenette; that when plaintiff and Kamine reached one of the upper floors of the store building where the davenettes were kept, Kamine invited her to sit down upon a davenette which she did; that Kamine, then and there acting within the scope of his authority as an agent and servant of the defendant, assaulted her by throwing his arms around her and attempting forcibly to have sexual intercourse with her, over her protest and against her will and consent. The petition further alleges that as a result of the struggle which ensued the plaintiff's back was wrenched, sprained and bruised; she was insulted and humiliated; she was unable to perform her household duties for several days; that the assault was rude and insolent, unlawful and without provocation, and plaintiff asks judgment against the defendant for five thousand dollars actual and five thousand dollars punitive damages.

"The answer is a general denial.

"The plaintiff was the only witness to the main facts at issue. She testified that she had been married for four and one-half years, and lived at 2104½ Biddle Street, in St. Louis. On the 29th day of November, 1921, she went to the defendant's furniture store and told the man who met her at the door that she wanted to look at some davenette sets. He called one of the salesmen, a Mr. Kamine, and told him to take plaintiff to the third floor. Kamine escorted her up the elevator to the third

floor and showed her some davenettes, on the east side of the floor, but none of them pleased her. He then invited her to look at a set in another part of the floor, where in addition to a davenette there was a rug, some chairs and a lamp. He asked her to sit down on the davenette to see how she liked it. She did as requested, and he thereupon grabbed her and attempted to have sexual intercourse with her. She resisted his efforts, and in the melee that followed they turned over the floor lamp, a screen, he bent her back across a chair and injured her back, and inflicted other indignities and injuries upon her. After five or six minutes she managed to get away from him and started to run down a back stairway. He called her back and then he disappeared. She then sat down on another davenette for a few minutes and another salesman came up to her. She said nothing whatsoever to him about the occurrence with Mr. Kamine, but went down the elevator with him and walked out the front door without any further conservation with anyone. She did not look for a police officer, nor did she mention the matter to her husband for about three weeks. After mentioning the affair to her husband she consulted an attorney, and then in company with her attorney called at defendant's store again. Mr. Kamine was at the store then and they had some conversation with him, but nothing important transpired.

"At the conclusion of the plaintiff's evidence the court indicated that he would give a peremptory instruction to the jury, in the nature of a demurrer to the evidence, to return a verdict for the defendant. Plaintiff thereupon took an involuntary nonsuit, with leave to move to set the same aside. Being unsuccessful in this motion, she has brought the case here by appeal, the sole allegation of error being the action of the court in giving the instruction above referred to.''

The ground of the trial court's ruling is not difficult to surmise. It was neither alleged nor shown that the defendant authorized, connived at, or ratified the act of its servant in committing the assault upon plaintiff. If

it is liable therefor its liability is vicarious and arises under the rule, *respondeat superior*. According to that rule: "A master is responsible for injuries occasioned to third persons by any negligence or misconduct of which his servants are guilty while acting within the scope of their employment." [6 Labatt's Mas. & Serv., sec. 2224.] A somewhat amplified statement of the rule as applied in this State is found in Whiteaker v. Railroad, 252 Mo. l. c. 458:

"The general rule is that the maxim *'respondeat,'* applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's purposes and in doing so acts negligently or willfully and maliciouly, or even contrary to his orders or criminally, in some instances. That general rule is hornbook doctrine and beyond dispute. The difficulty is in applying it to the circumstances and facts of each particular case; for it would be intolerable to hold the master liable when his servant was pursuing his own ends for his own purposes, and not the master's, and in doing so commits a wrong. The employer of men would be in hard lines if that were the law."

And again in Wolfe v. Railroad, 282 Mo. l. c. 563:

"The fact that the act was done during the time of the servant's employment is not conclusive, nor is the motive of the servant so. The question is, was the act done by virtue of the employment and in furtherance of the master's business? [Hinkle v. Railroad, 199 S. W. 227.] 'Whose business was being done and whose general purposes were being promoted?' [Maniaci v. Express Co., 182 S. W. 981.] Was the servant acting in the line of his employment, about his master's business and seeking to accomplish his master's purpose?"

On the facts stated but one conclusion can be drawn, namely, that Kamine, in assulting plaintiff, was not acting within the scope of his employment and in furtherance of his master's business and to accomplish the purposes of his master, but on the contrary was pursuing his own ends for his own purposes.

Appellant asserts that the case made on her pleadings and proof falls within certain well-defined exceptions to the rule which confines the master's liability for the acts of his servants to those done within the scope of their employment. The principle upon which the exceptions rest finds a fairly comprehensive statement in Ruling Case Law as follows:

"It is well-settled law that, in all cases where the employer owes a special legal duty to the public, he cannot shirk or evade it by committing its performance to another, but is bound absolutely to perform the duty, and is liable for a failure to do so in any respect whereby injury results to others, whether such failure results from negligence, or from the wilful, wanton, or criminal conduct of the employee or agent to whom the duty is committed. Being bound to do the act or perform the duty, if he does it by another the employer is treated as having done it himself." [18 R. C. L. 792.]

The principle thus stated, frequently invoked in cases involving the torts of employees of carriers, is without application here. A merchant owes to his customer, who comes upon his premises by invitation, the positive duty of using ordinary care to keep the premises in a reasonably safe condition for use by the customer in the usual way; and this doubtless includes the duty of using ordinary care to employ competent and law abiding servants. But that is the extent of his duty; he is not an insurer of his customer's personal safety. [Cobb v. Simon, 119 Wis. 604; Fairbanks v. Warehouse Co., 189 Mass. 419; Bowen v. Railroad, 136 Fed. (C. C. A.) 306.]

The judgment of the circuit court is affirmed. *Graves* and *Atwood, JJ.,* concur.