153 So. 296

# GREAT ATLANTIC & PACIFIC TEA CO. v. LANTRIP.

## 6 Div. 518.

Court of Appeals of Alabama.
March 6, 1934.

———◆———

J. L. Drennen, of Birmingham, for appellant.

Harvey M. Emerson, Stephen B. Coleman, and Thomas Seay, all of Birmingham, for appellee.

SAMFORD, Judge.

The action was originally brought against Robert F. Jennings and Great Atlantic &

Pacific Tea Company, claiming damages by reason of an assault and battery committed by Jennings on plaintiff at a time when Jennings was in the employ of defendant and while acting within the line and scope of his employment. The complaint was amended by striking out Jennings as a party defendant and by adding counts A, B, and C. The plea of defendant was in short by consent the general issue, with lieve, etc.

It is without dispute that at the time of the alleged assault Jennings was employed by defendant at its place of business at 6203–5 First Avenue North, in the city of Birmingham, as a meat cutter and salesman in charge of defendant's fresh meat department in said place of business, and that as a part of his duties he was to cut meat and make sales to customers of that store.

The testimony of the plaintiff, she being the only witness to the material facts, tended to prove that, between 6:30 and 7 o'clock p. m. February 15, 1932, she went into the place of business of defendant at which time there was present Mr. Peck, the general manager of defendant's store, a helper, a Mr. Cunningham, a young man just grown and whom she had known as a boy, and Jennings; all of these parties were standing near together and in open view of each other; that she gave Peck an order for a loaf of bread and a package of cigarettes and Jennings an order for 10 cents worth of sausage. Plaintiff did not know Jennings other, "Than by trading there." Plaintiff further testified that Jennings "Did not start to wait on me. He leaned against this register (meaning a cash register located near the center of the store), and asked me how much sausage I said I wanted, and I said I wanted a dime's worth of sausage. He said could you use three dollars worth of sausage. I said no, I don't believe I can. I wish you would hurry up. It is raining. He said do you want it wrapped up. I said no, just put it in my hand. Mr. Jennings said, couldn't you use this three dollars worth of sausage. He said, you better take this sausage, you will never forget it and he moved his body that way (indicating) and held his hand on himself." The witness further testified:

"There were some men standing there. There was the manager, Mr. Peck, and a helper, Mr. Nelson and a Mr. Cunningham. And I decided—After he did that, I turned around and looked towards the manager and asked if the manager of the store would wait on me, and I recognized Mr. Cunningham, whom I knew when he was a child, and they were standing there staring at Mr. Jennings, like that, and Mr. Jennings said, 'Oh, come on back here and get your sausage.' Well, I thought that was the end of it,—well, he acted as if he was going to wait on me, as if he was going to give me the sausage. So, I taken Mr. Cunningham by the arm and went back there. Mr. Cunningham, Mr. Peck and Mr. Nelson were still standing right there. (Indicating). I walked over and caught hold of Mr. Cunningham's arm. Mr. Jennings in the meantime had gone back here to the ice box and opened the ice box door. He opened the ice box door after he told me to come on back there and get the sausage. I went back there and Mr. Cunningham was with me. I see the line drawn across the board there. It represents a partition there in the store. The best I remember it was a solid board. There was an entrance between the ice box and that partition and the ice box door swings back that way towards the back of the store.

"Q. All right. When you got back there what happened? A. He stepped behind here, behind this partition, and taken.—He taken my hand and tried to put it on him, on his body, in the same place indicated before. I jerked loose from him and started to go out of the store. I jerked loose from Mr. Jennings, this man right here and went on to the front of the store, but I stopped right out there because Mr. Nelson had gone behind there to wait on me."

Cunningham and the helper were not introduced as witnesses. The testimony of the plaintiff was flatly contradicted by Peck and Jennings testifying on behalf of defendant.

■■ Assuming that the three witnesses testifying to the material facts are all equally interested, the plaintiff making an effort to obtain a money judgment against a corporation to resent an insult and to compensate her for a nervous shock caused by an employee of the corporation on the one hand, and the employee to clear his skirts from the charge and the manager to save his company from being mulcted in damages on the other, and the burden being on the plaintiff to make out her case, it would seem that the preponderance of the evidence was against the finding of the jury. Coupled with this the physical surroundings at the time, a fully lighted store, the immediate presence of three other parties, the absence of any outcry or complaint by the plaintiff at the time, although she had hold of the arm of one man and knew the manager of the store, the striking of the name of the offending employee as a

party defendant from the complaint, coupled with the improbability of plaintiff's story, leads us to conclude that the verdict in this case as against this defendant which is called upon to suffer for the wrongs of another is wrong and unjust and in any event should not be allowed to stand.

There is another point which we are of the opinion is conclusive of this appeal. The evidence conclusively shows that, however reprehensible the conduct of Jennings was in the alleged assault on plaintiff, such conduct and assault was not so connected with the business of defendant as to render it liable in this action. While the act complained of was done during the employment of Jennings by defendant, such act was not within the scope of his employment. The act complained of was entirely personal to Jennings and was wholly aside from the master's business. Western Union Tel. Co. v. Hill (Ala. App.) 150 So. 709;[1] Western Union Tel. Co. v. Hill (Ala. Sup.) 150 So. 711;[2] Hardeman v. Williams, 150 Ala. 415, 43 So. 726, 10 L. R. A. (N. S.) 653; Western Union Tel. Co. v. Hill (C. C. A. 5 Cir. November 8, 1933) 67 F.(2d) 487; Palos Coal & Coke Co. v. Benson, 145 Ala. 664, 39 So. 727; Barker v. Dairymen's, etc., 205 Ala. 470, 88 So. 588. The rules of law governing in cases of this character are thoroughly well settled. Some confusion sometimes arises from a failure to keep in mind the distinction between an act done by the servant within the line and scope of his duty and an act done by the servant during the time of his employment.

The defendant was entitled to the general charge and for this error the judgment is reversed and the cause is remanded.

Reversed and remanded.

---

[1] 25 Ala. App. 540.      [2] 227 Ala. 469.