**CITY OF GREEN COVE SPRINGS**

v.

Yvonne **DONALDSON.**

No. 21223.

United States Court of Appeals
Fifth Circuit.

June 28, 1965.

John E. Mathews, Jr., Marion R. Shepard, Mathews, Osborne & Ehrlich, Jacksonville, Fla., for appellant.

Will O. Murrell, Arthur T. Boone, Jacksonville, Fla., for appellee.

Before JONES and GEWIN, Circuit Judges, and ESTES, District Judge.

JONES, Circuit Judge.

This action was brought against appellant, a Florida municipal corporation, by

the appellee, Mrs. Yvonne Donaldson, to recover damages sustained as a result of the actions of an employee of the City of Green Cove Springs. Jurisdiction was based upon diversity of citizenship. A judgment was recovered in the amount of $9,000, and costs. After an appeal to this Court was perfected, the appellee moved for a certification of the controlling question to the Supreme Court of Florida. The motion was denied.

The facts are virtually undisputed. At about 9:00 o'clock in the evening of July 10, 1960, Mrs. Donaldson and a companion, Mrs. Wells, left the Donaldson home in Mayport, Florida, and drove to Green Cove Springs. After arriving there and driving around for several hours, the two women began their journey home, and were then stopped by two police officers employed by the City and driving an official vehicle. The officers were on duty at the time. The record shows that the initial reason for the arrest was that Mrs. Donaldson was slightly exceeding the speed limit, for which the officers intended to give her a mere warning. Upon further investigation it appeared that there was something irregular about the automobile license tag, and Mrs. Donaldson was requested to follow the officers to the city jail so the tag could be checked.

Upon her arrival at the city jail, Mrs. Donaldson was informed that she would have to post a $35.00 bond or be placed in jail for the improper tag. At this time, the parties were standing in a parking lot behind the jail. At no time did they enter the jail building. Mrs. Donaldson asked to use a telephone. The only telephone in the jail was restricted to use for fire calls and the officers took the two women to the police station, about five blocks away. The trip to the police station was taken in the police car. Mrs. Donaldson had given her automobile keys to the officers. After their arrival at the station, the two women were left standing in front while the two officers answered a police call. No other policemen were on duty at this time. The record

indicates that Mrs. Donaldson entered the police station to get some coffee and noticed some shore patrolmen there, but did not speak to them or use the telephone, because "there was no one to call."

When the officers returned, one of them took Mrs. Wells to her home at Mayport in his private automobile. The other police officer, Mosely, and Mrs. Donaldson got into the police car and drove back to the city jail. At no time was the plaintiff booked or issued a citation; nor was she ever taken into the jail. When they arrived at the jail, Mosely said there was no one there, and drove to a point near a railroad track, a short distance away. Mosely stopped the car, "propositioned" Mrs. Donaldson several times, and then assaulted her. According to the plaintiff's testimony, she resisted for approximately forty-five minutes, until Mosely overcame her and succeeded in raping her. The next thing she remembered was driving home. The jury returned a verdict for Mrs. Donaldson, and the City has appealed from the judgment entered on the verdict.

The City specifies as error the failure of the trial court to direct a verdict in its favor at the close of the evidence. After alleging the facts set forth above, the complaint stated that the City, "carelessly and negligently failed to protect the plaintiff and suffered, allowed and permitted the plaintiff to be violently assaulted and debauched * * *." The initial question is whether the evidence, viewed most favorably for the plaintiff, can support the judgment on the theory that the City was negligent. Ross v. Hayes, 5th Cir. 1964, 337 F.2d 691. We hold that it cannot.

Since the decision of the Florida Supreme Court in Hargrove v. Town of Cocoa Beach, Fla.1957, 96 So.2d 130, Florida municipal corporations are liable for injuries resulting from the negligence of their agents under principles of respondeat superior. They are immune from such liability for injuries arising from the exercise of legislative, judicial,

quasi-legislative, or quasi-judicial functions, but in all other respects, the liability of a Florida municipality for the negligence of its agents is to be determined upon the same principles that govern private corporations, one of which is the doctrine of proximate cause. Seaboard Air Line Railway Co. v. Mullin, 1915, 70 Fla. 450, 70 So. 467, L.R.A. 1916D, 982.

■ The principal claim of the plaintiff at the trial was that the City was negligent in failing to provide a matron at the city jail to insure against assault of the kind perpetrated by Officer Mosely. This was the view of the trial court in denying the City's motion for a directed verdict, on the theory that a jury might resonably find that the City was negligent, and that its negligence was the proximate cause of the plaintiff's injury. We think this view overlooks the fact that at no time did plaintiff or Officer Mosely enter the city jail or otherwise make their presence known to anyone who might have been inside. Consequently, the presence or absence of a matron in the jail bore no causal relation to the plaintiff's injury. Causation in fact is an essential element of proximate cause in Florida. Seaboard Air Line Railway Co. v. Mullin, supra; Pope v. Pinker-Hays Lumber Co., 1st D.C.A.Fla. 1960, 120 So.2d 227, cert. den., 127 So.2d 441.

■ Furthermore, it appears that the Florida courts would hold that the decision whether or not to hire a matron, even if negligently made, would be the exercise of a legislative or quasi-legislative function, for which the municipality is immune from liability. In Raven v. Coates, 3rd D.C.A.Fla.1961, 125 So.2d 770, cert. den., 138 So.2d 339, the plaintiff sought damages from a municipality for injuries allegedly resulting from the failure of the city to place or replace a traffic control device at a particular intersection. In holding the city immune from liability on the ground that this

was a legislative or quasi-legislative function, the court said, "[t]he placing of a policeman or a traffic control device at a particular intersection is a matter of judgment by city officers." 125 So.2d 770, 771–772. Similar results have been reached on claims arising from the failure of a city to provide adequate fire-fighting personnel and equipment, Steinhardt v. Town of North Bay Village, 3rd D.C.A.Fla.1961, 132 So.2d 764, cert. discharged, 141 So.2d 737; refusal of a city to grant a building permit, Akin v. City of Miami, Fla.1953, 65 So.2d 54; and the passage by the city of an unconstitutional ordinance, Elrod v. City of Daytona Beach, 1938, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049. The decision of the governing body of a city of 4,233 people,[1] whether to employ additional police personnel is equally a matter of judgment, calling for the exercise of legislative or quasi-legislative discretion, and the city is immune from negligence liability for injuries resulting from that decision.

■ Because the jury's finding that the City was negligent might have been based upon facts other than its failure to provide a matron, we must determine whether, under any view of the facts, negligence of the City could have been found by the jury to have been the proximate cause of the injury. See Ellingson v. Willis, 1st D.C.A.Fla.1964, 170 So.2d 311. The requirement of proximate cause was well expressed by Justice Sebring in the frequently cited case of Cone v. Inter County Telephone & Telegraph Co., Fla.1949, 40 So.2d 148:

"Not every negligent act of omission or commission gives rise to a cause of action for injuries sustained by another. It is only when injury to a person who himself is without contributing fault has resulted directly and in ordinary natural sequence from a negligent act without the intervention of any independent efficient cause, or is such as ordinarily

---

1. Bureau of the Census, U. S. Dep't of Commerce, Final Report PC(1)–11B (Florida) 11–28 (1960).

and naturally should have been regarded as a probable, not a mere possible, result of the negligent act, that such injured person is entitled to recover damages as compensation for his loss. Conversely, when the loss is not a direct result of the negligent act complained of, or does not follow in natural ordinary sequence from such act but is merely a possible, as distinguished from a natural and probable, result of the negligence, recovery will not be allowed. Seaboard Air Line Ry. Co. v. Mullin, 70 Fla. 450, 70 So. 467, L.R.A.1916D, 982, Ann.Cas.1918A, 576. 'Natural and probable' consequences are those which a person by prudent human foresight can be expected to anticipate as likely to result from an act, because they happen so frequently from the commission of such act that in the field of human experience they may be expected to happen again. 'Possible' consequences are those which happen so infrequently from the commission of a particular act, that in the field of human experience they are not expected as likely to happen again from the commission of the same act." 40 So.2d 148, 149.

The limitation of liability to natural and probable consequences of the negligence calls for a test of objective rather than subjective foreseeability. That is, the appropriate test of foreseeability is whether "the *type* of negligent act involved in a particular case has so frequently previously resulted in the *same type* of injury or harm that 'in the field of human experience' the same *type* of result may be expected again." Pinkerton-Hays Lumber Co. v. Pope, Fla.1961, 127 So.2d 441, 443. See also Schatz v. 7-Eleven, Inc., 1st D.C.A.Fla.1961, 128

So.2d 901. Applying that test to the case before us we do not think any interpretation of the evidence or allowable inferences therefrom would support a jury finding that an act of negligence by the City would have been expected by a person with prudent human foresight to have resulted in an assault and rape, or similar acts, by Officer Mosely, who was himself sworn to uphold the law, and was chosen for that purpose. We should note here that this case contains neither allegations nor proof that the City was negligent in any manner in hiring Officer Mosely, because of previously demonstrated propensity to sexual misconduct or otherwise. Cf. Mallory v. O'Neil, Fla.1954, 69 So.2d 313. We therefore hold that plaintiff's injury was not proximately caused by any negligence of the City, but resulted instead from an intervening, independent, and unforeseeable act.[2]

■■ The pleadings in this case were based solely upon negligence, presumably upon the theory that municipalities in Florida were immune from liability for the intentional torts of their agents. See Thompson v. City of Jacksonville, 1st D.C.A.1961, 130 So.2d 105, cert. den. 147 So.2d 530; Middleton v. City of Fort Walton Beach, 1st D.C.A.Fla.1959, 113 So.2d 431. Although certain defenses not relevant to the issue of the City's negligence or liability therefor were stricken from the pleadings by the trial court, the evidence presented at the trial by both parties was sufficient to raise the issue of the City's liability, under the doctrine of respondeat superior, for an intentional tort of its police officer. Subsequent to the oral argument before this Court, the Supreme Court of Florida held that Florida municipal corporations are liable for intentional torts of their police offi-

2. See generally Tampa Elec. Co. v. Jones, 1939, 138 Fla. 746, 190 So. 26; Sharon v. Luten, 1st D.C.A.Fla.1964, 165 So.2d 806; Davis v. Shiappacossee, 2d D.C.A. Fla.1962, 145 So.2d 758, rev'd, 155 So.2d 365; McWhorter v. Curby, 2d D.C.A.Fla. 1959, 113 So.2d 566; 23 Fla.Jur., Negligence § 29 (1959). See also Carini v. Beaven, 1914, 219 Mass. 117, 106 N.E. 589, L.R.A.1915B, 825 (negligence of bishop in hiring held not to be proximate cause of rape by parish priest); Henderson v. Dade Coal Co. et al., 1897, 100 Ga. 568, 28 S.E. 251, 40 L.R.A. 95 (negligence of former custodian held not to be proximate cause of rape by escaped convict.)

cers to the same extent as private corporations. City of Miami v. Simpson, Fla.1965, 172 So.2d 435, No. 33,036. The parties to this action having filed supplemental briefs on the issue, and the issue having been tried on the express or implied consent of the parties, in the absence of prejudice to either party, we shall treat the pleadings as having asserted a cause of action based upon the City's liability for the intentional tort of Officer Mosely, with appropriate defenses having been raised. F.R.Civ.P. 15(b), 28 U.S.C.A.; Commissioner of Internal Revenue v. Finley, 10th Cir. 1959, 265 F.2d 885, cert. den., 361 U.S. 834, 80 S.Ct. 87, 4 L.Ed. 76; Gibbs v. Randolph, 5th Cir. 1957, 250 F.2d 41.[3]

■ The imposition upon an employer of vicarious liability for the torts of its agents is limited by the proposition that the tort must have been committed while the agent was acting within the scope of his employment. The rule in Florida was stated in Stinson v. Prevatt, 1922, 84 Fla. 416, 94 So. 656:

"As a general rule under the principles of the common law an employer is liable in damages for the wrongful act of his employee that causes injury to another person, if the wrongful act is done while the employee is acting within the apparent scope of his authority as such employee to serve the interests of the employer, even though the wrongful act also constitutes a crime not a homicide or was not authorized by, or was forbidden by, the employer, or was not necessary or appropriate to serve the interests of the employer, unless the wrongful act of the employee was done to accomplish his own purposes, and not to serve the interests of the employer." 84 Fla. at 418–419, 94 So. at 657.

Although the scope of employment is considerably broader than explicitly authorized acts of the employee, it does not extend to cases in which "the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do." Weiss v. Jacobson, Fla.1953, 62 So.2d 904, 906, quoting from Annot., 114 A.L.R. 1033 (1938) and Cooley, Torts 627 (2d Ed.).

■ The question whether a tort committed by an agent is within the scope of his employment is normally to be determined by the jury,[4] except in cases, such as this one, in which the jury could reach only one conclusion that could be sustained. See Lockhart v. Friendly Finance Company, 1st D.C.A.Fla.1959, 110 So.2d 478, cert. den. 114 So.2d 5. We hold that the acts of Officer Mosely in his assault and rape of the plaintiff were outside the scope of his employment as a police officer for the City of Green Cove Springs. Consequently, the City is not liable, as a matter of law, for her injuries.

■ It is generally held that liability for an assault by an employee that bears no relation to the real or apparent scope of his employment or to the interest of his employer is not imposed upon the employer under the doctrine of respondeat superior. Grimes v. B. F. Saul Co., Inc., D.C. Cir. 1931, 60 App.D.C. 47, 47 F.2d 409; Community Theatres Co. v. Bentley, Ct. of App. 1953, 88 Ga.App. 303, 76 S.E.2d 632; Bradley v. Stevens, 1951, 329 Mich. 556, 46 N.W.2d 382, 34 A.L.R. 2d 367; Smothers v. Welch & Co. House Furnishing Co., 1925, 310 Mo. 144, 274 S.W. 678, 40 A.L.R. 1209; Carini v. Beaven, 1914, 219 Mass. 117, 106 N.E.

---

**3.** See also City of Cuero v. Tupper-Texas, Inc. 5th Cir. 1955, 226 F.2d 121; Taliaferro v. Sims, 5th Cir. 1951, 187 F.2d 6; Fidelity & Casualty Co. of New York v. Mitchell, 5th Cir. 1943, 134 F.2d 537; 3

Moore, Federal Practice ¶ 15.13 [2] (1964).

**4.** City of Miami v. Simpson, supra; Columbia By the Sea, Inc., v. Petty, 2d D. C.A.Fla.1963, 157 So.2d 190.

589, L.R.A.1915B, 825; Prosser, Torts 354 (2d ed. 1955); Annot., 34 A.L.R.2d 372 (1954); Annot., 114 A.L.R. 1033 (1938).[5]

█ The courts of Florida have consistently followed the principle that "a corporation may be liable in damages for injuries to others proximately resulting from the doing by its officers in an unauthorized manner of a lawful and authorized act, but not for an unlawful or prohibited act." Avey v. City of West Palm Beach, 1943, 152 Fla. 717, 12 So.2d 881. See City of Coral Gables v. Giblin, 3rd D.C.A.Fla.1961, 127 So.2d 914, aff'd, 149 So.2d 561; City of Miami v. Albro, 3rd D.C.A.Fla.1960, 120 So.2d 23.[6]

Plaintiff would have us hold that a Florida municipality owes an absolute duty of protection to its prisoners and, by analogy to the liability of sleeping car companies for injuries to their patrons,[7] occupies the position of an insurer against acts of the kind perpetrated by Officer Mosely. No cases, Florida or otherwise, are cited for this proposition or for a rule which subjects municipalities to the high standard of care which the law imposes upon the common carriers of passengers.

We are not required, as was the Court in Putnam v. Erie City Manufacturing Co., 5th Cir. 1964, 338 F.2d 911, to resort to treatises, law reviews and other sources to supply us with a rule which we believe the state court would adopt. We are fortunate in having for our guidance an authoritative declaration of principle which is controlling of our decision here. The Florida Supreme Court has recently held:

"By way of caveat, we point out that a city is not liable for every wrong committed by an employee merely because he is a municipal employee. The limitations applicable to the liability of private employers are likewise applicable to municipalities. The liability of a master can arise in such instances only when the act of the servant is done within the real or apparent scope of the master's business. The master's liability does not arise when the servant steps aside from his employment to commit the tort or does the wrongful act to accomplish some purpose of his own. If the tort is activated by a purpose to serve the master or principal, then he is liable. Otherwise he is not. These generally are the rules applicable to private corporations which we adopt as controlling the liability of municipal corporations." City of Miami v. Simpson, 1965, 172 So.2d 435, No. 33,036, at 3, 4.

The facts, construed most favorably for the appellee, will admit of no inference other than that in his rape of the plaintiff, Officer Mosely stepped aside from his employment to accomplish his own, rather than the City's purpose. Accordingly, the judgment is reversed and the cause remanded to the district court for entry of a judgment in favor of the City of Green Cove Springs.

Reversed and remanded.

5. See also Western Union Telegraph Co. v. Hill, 5th Cir. 1933, 67 F.2d 487; Western Union Telegraph Co. v. Hill, 1953, 25 Ala.App. 540, 150 So. 709, cert. den., 227 Ala. 469, 150 So. 711, Great Atl. & Pac. Tea Co. v. Lantrip, 1934, 26 Ala.App. 79, 153 So. 296.

6. For the principles defining the scope of employment for purposes of the employer's liability for the torts of his agent in Florida, see, e. g., Dieas v. Associates Loan Co., Fla.1957, 99 So.2d 279; Riddle et al. v. Aero Mayflower Transit Co. et al., Fla.1954, 73 So.2d 71; Weiss v. Jacobson, Fla.1953, 62 So.2d 904; Town

of Palm Beach v. Vlahos, 1943, 153 Fla. 781, 15 So.2d 839, rehearing den., 15 So. 2d 842, 848; City of Tampa v. Easton, 1940, 145 Fla. 188, 198 So. 753; Stinson v. Prevatt, supra; Scott v. City of Tampa, 1911, 62 Fla. 275, 55 So. 983, 42 L.R.A., N.S., 908; City of Orlando v. Pragg, 1893, 31 Fla. 111, 12 So. 368, 19 L.R.A., N.S., 196; 21 Fla.Jur., Master & Servant §§ 71, 72 (1958).

7. See, e. g., Campbell v. Pullman Palace Car Co., N.D.Iowa 1890, 42 F. 484, aff'd, 154 U.S. 513, 14 S.Ct. 1151, 38 L.Ed. 1069.