**Donna CARTER, Plaintiff,**

v.

**AMERICA ONLINE, INC., Defendant.**

**No. 3:00–CV–54–J–20TJC.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 2, 2001.

J. Richard Moore Jr., Rahaim, Watson, Dearing, Berry & Moore, P.A., Jacksonville, FL, for Plaintiff.

Edward H. Trent, Richard N. Margulies, Akerman, Senterfitt & Edison, P.A., Jacksonville, FL, for Defendant.

## ORDER

SCHLESINGER, District Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 22, filed July 25, 2001), to which Plaintiff has filed a Response in Opposition (Doc. No. 34, filed August 17, 2001). In this action alleging sexual harassment by a coworker, Plaintiff seeks recovery from her former employer for violations of federal and state anti-discrimination laws, negligent retention, and vicarious liability. On July 21, 2000, the Court dismissed the negligent retention Count. *See* Doc. No. 14. Defendant now seeks dismissal of the remaining Counts of the Complaint, claiming sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Count I), violation of the Florida Civil Rights Act of 1992 ("FCRA"), Fla.Stat. § 760.01 et seq. (Count II), and Intentional Infliction of Emotional Distress (Count III).

## I. Background

The following facts are drawn from Plaintiff's Complaint and the depositions,

affidavits, answers to interrogatories, and other evidentiary materials accompanying the parties' summary judgment briefs: Plaintiff was employed by Defendant America Online, Inc. ("AOL") from approximately August 1995 through September 1998 as a "tech mail" representative in Jacksonville, Florida. Her primary duties involved responding to customer queries via e-mail in a designated location where she worked side by side with other tech mail representatives. While at AOL, Plaintiff worked under the immediate supervision of James McNeal, who was her tech mail team's "coach" and had supervisory authority over her team. Except for a period of approximately two months during the summer of 1998, McNeal was Plaintiff's supervisor during all of the incidents alleged in the Complaint.

Beginning sometime in 1997,[1] Plaintiff claims that a fellow team member named Teddy Fortin began a campaign of sexual harassment against her. She alleges that Fortin routinely used sexually charged and vulgar language around her, and repeatedly requested oral sex and other sexual favors from her despite knowing that she viewed such requests as offensive. On one occasion when Plaintiff found herself alone with Fortin in the company parking lot, he allegedly told her that, being a former Navy Seal, he could "kill [her] and fuck [her] before [she] was cold." Plaintiff says she felt physically threatened by this particular remark. She also claims that Fortin physically harassed her, grabbing her buttocks at least once, and on another occasion attempted to touch her breasts. According to Plaintiff, at least some of this conduct was personally witnessed by McNeal, and she also specifically complained to McNeal about Fortin.[2] According to Plaintiff, McNeal was generally dismissive of her complaints, and he allegedly told her not to "make waves" and that she should "expect that kind of thing" in a "man's environment." Plf.'s Dep. at 160.

On August 31, 1998, Plaintiff was involved in a dispute with Fortin over the lighting in the team's work area. Plaintiff admits that during a heated exchange she told Fortin, "Do not turn the lights on again, unless you want to die." Robert Stephens, a tech mail coach who was filling in for McNeal at the time, overheard the remark and immediately spoke to Plaintiff about threatening Fortin. Stephens also apparently reported the incident to Debi Cunningham, who as Plaintiff's "Service Delivery Manager," was her next level supervisor above McNeal. Upon learning of Plaintiff's threat against Fortin, Cunningham met with her privately to discuss the incident. At that meeting, Plaintiff says she informed Cunningham that Fortin had been sexually harassing her, and Cunningham told her that she would investigate.

Approximately one week after the lighting incident, on September 7, 1998, Carter and another female coworker complained to Doug Beamon, the Human Resources Manager, regarding Fortin's alleged mistreatment of a male coworker. Plaintiff memorialized that conversation in an e-

---

1. During her deposition Plaintiff could not remember the specific dates on which she was sexually harassed.

2. In her Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff claimed that she also complained to another supervisor, Denise Lawton, about Fortin sexually harassing her. This assertion, however, is belied by Plaintiff's deposition transcript, wherein she stated under oath that she never discussed Fortin's behavior with Lawton while she was employed at AOL. See Plf.'s Dep. at 105–06.

mail to Beamon that evening, in which she stated that Fortin had generally been "very rude and vulgar." Def.'s Exh. 10. Plaintiff claims that in a follow up meeting with Beamon, she specifically told him that Fortin had sexually propositioned her and physically harassed her. The next day, Fortin was fired.

According to Plaintiff, the "real reason" Fortin was terminated was because of his use of profanity in the workplace, specifically in a conversation with a male coworker. She asserts that AOL's termination of Fortin had nothing to do with her accusations of sexual harassment. Nevertheless, she does not dispute that Fortin was fired almost immediately after she complained to Beamon.

AOL has a stated policy of combating sexual harassment in the workplace. The policy, which Plaintiff read and understood when she began her employment with the company, directs employees to follow the following procedures for reporting harassment in the workplace:

> If you feel you have been harassed, you should tell the person how you feel—if you feel comfortable doing so. If not, contact your supervisor (or the next highest AOL manager with whom you feel comfortable discussing the incident) and your HR Department immediately. Your claim will be investigated thoroughly, and no repercussive actions will be made toward you.

Def.'s Exh. 1.

The policy thus establishes a dual mechanism for reporting harassment, whereby a person who wishes to lodge a complaint is required to notify his or her supervisor (or the next highest manager with whom he or she feels comfortable) *and* the Human Resources department. The parties dispute the extent to which Plaintiff complained to McNeal regarding Fortin's harassment. As noted above, Plaintiff claims that she not only complained to McNeal, but that he actually witnessed some of the harassment and failed to stop it. For its part, Defendant claims that Plaintiff never told McNeal that Fortin had requested sexual favors and seems to dispute that McNeal personally witnessed any acts of harassment. Despite this factual dispute, there is no indication in the record that Plaintiff ever complained to anyone in the Human Resources department as required under AOL's anti-harassment policy, until she spoke with Doug Beamon in September 1998.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When a moving party has discharged its burden, the nonmoving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the moving party has met its burden of establishing that

there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the nonmovant, *Key West Harbour v. City of Key West,* 987 F.2d 723, 726 (11th Cir.1993), and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256, 257 (11th Cir.1989).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). It must be emphasized that the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported summary judgment motion. Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III. Analysis

### A. *Sexual Harassment*

In moving to dismiss Plaintiff's discrimination claims, Defendant raises a two-fold

attack: First, it argues that Fortin's alleged conduct was not sufficiently severe or pervasive so as to constitute actionable harassment; and second, that even if Fortin's conduct did rise to the level of legal harassment, AOL was not on notice of such harassment until September 1998, and thus cannot be held vicariously liable for harassment that occurred before then.

■ To establish a prima facie case of hostile work environment sexual harassment under Title VII,[3] Plaintiff must show that: 1) she belongs to a protected group; 2) she has been subjected to unwelcome harassment; 3) the harassment was based on sex; 4) the harassment was sufficiently severe and pervasive to alter the terms and conditions of employment and to create a discriminatorily abusive working environment; and 5) a basis exists for holding the employer liable. *See Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir.1999) (en banc), *cert. denied,* 529 U.S. 1068, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000).[4] Regarding the fifth of these elements, a plaintiff may establish an employer's vicarious liability for a coworker's harassment by showing that the employer knew or should have known about the harassment and failed to take remedial action. *See Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982).

■ The Eleventh Circuit has held that an employer is deemed to be "on notice" of sexual harassment where a complainant follows the employer's reasonable procedures for reporting harassment. *See Bre-*

---

**3.** Discrimination claims asserted under the FCRA are evaluated using the same framework as that used in Title VII cases. *See Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998). Accordingly, the Court's analysis of Plaintiff's

Title VII claim also applies to her state law discrimination claim.

**4.** The Defendant has not argued that Plaintiff cannot make the threshold showing with respect to any of the first three elements, and the Court need not further address them here.

*da v. Wolf Camera & Video*, 222 F.3d 886, 890 (2000) ("The sole inquiry when the employer has a clear and published policy is whether the complaining employee followed the procedures established in the company's policy."); *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1364 (11th Cir.1999). By designating select persons to whom complaints of harassment should be directed, the employer "itself answer[s] the question of when it would be deemed to have notice." *Coates*, 164 F.3d at 1364. Accordingly, when employees issue a complaint to the proper person or persons as designated by an anti-harassment policy, they "need not be concerned with whether they pursued their complaints far enough up the company ladder," because the very act of following the procedure constitutes notice. *Breda*, 222 F.3d at 889.

The law is less clear in cases where the employee complains of harassment, but fails to utilize the proper channels for reporting complaints. The Court of Appeals has implied, however, that it would be reluctant to ascribe notice under such circumstances because of the unreasonable burden such a standard would place on the employer. *See Coates*, 164 F.3d at 1366 ("When an employer has taken steps, such as promulgating a considered sexual harassment policy, to prevent sexual harassment in the workplace, an employee must provide adequate notice that the employer's directives have been breached so that the employer has the opportunity to correct the problem.").

 Moreover, in the related context of harassment by a supervisor, an employer can establish an affirmative defense to vicarious liability by showing that an employee failed to follow reasonable procedures for reporting the harassment. *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1300 (11th Cir.2000) ("[I]t is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address the problems and grievances") (quoting *Farley v. American Cast Iron Pipe*, 115 F.3d 1548, 1554 (11th Cir.1997)); *cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Although a different standard is used in cases involving coworker harassment, where courts apply an ordinary negligence standard, there is a similar concern at issue in both category of cases. Namely, an appropriate balance must be struck between preventing workplace harassment and giving employers a reasonable opportunity to cure it. In this Court's view, and absent a contrary directive from the Court of Appeals, an employer in most cases cannot be held liable for coworker harassment when the complaining employee did not report the harassment pursuant to publicized and reasonable procedures.

Of course, the Court can envision some rare circumstances where an employer might be considered to have notice of harassment despite an employee's failure to complain to the proper persons. For example, complaints made to a company's CEO, even if inconsistent with a reporting policy, would probably suffice to place an employer on notice. When an employee complains to a low-level supervisor, however, in lieu of following a reasonable anti-harassment policy, this Court has grave concerns about attributing notice to the employer.

 In this case, the evidence is undisputed that AOL's anti-harassment policy required the Plaintiff to bring her complaints to *both* her supervisor (or the next

highest level supervisor with whom she felt comfortable) *and* the Human Resources department. While it is unclear from the record why AOL adopted this dual reporting mechanism, the Court does not find the policy to be inherently unreasonable and there is no evidence that it was administered in bad faith. *See Madray,* 208 F.3d at 1299. Thus, the paramount question becomes whether Plaintiff made use of AOL's policy so as to put the company on notice that she had been harassed. Based on the record before it, the Court must conclude that she did not, at least not prior to September 1998.

While there is an issue of fact regarding the extent of McNeal's awareness of Fortin's harassment of the Plaintiff, complaining to McNeal would not have itself satisfied AOL's anti-harassment policy, because under the policy's clear terms Plaintiff was also required to report the harassment to the Human Resources department. Prior to September 1998, Plaintiff had not followed AOL's procedures for reporting harassment, despite having read and understood them, in that she did not report Fortin's conduct to anyone in Human Resources. Moreover, there is no indication that McNeal—a low level supervisor—was high up enough on the chain of command at AOL so that notice to him would equal notice to the company.[5] Therefore, the Court concludes that AOL did not have notice of Fortin's harassment before September 1998.

██ The uncontroverted record shows that when Plaintiff eventually *did* complain to someone in Human Resources, i.e.,

Doug Beamon, her harasser was almost immediately fired. While Plaintiff asserts that the timing of Fortin's termination was purely coincidental, the law only requires that an employer take reasonable steps to abate the harassment once it receives notice. *See Coates,* 164 F.3d at 1364. Whether the harassment was abated for the "right" reason should not affect this determination, as long as the abatement was permanent and effective. It is beyond dispute that firing Fortin was reasonably likely to abate the harassment in this case, and that his termination occurred shortly after Plaintiff complained to Beamon. The Court will not attempt to delve into AOL's motivation for firing Fortin. Rather, it is sufficient that AOL took action that had the effect of ending Fortin's alleged harassment of the Plaintiff, and that the action came within a reasonable time after the company was put on notice.

Because the Court concludes that Plaintiff cannot establish a basis for holding her employer liable for Fortin's alleged harassment, it need not consider the Defendant's other asserted grounds for dismissal of the discrimination claims.

**B.** *Intentional Infliction of Emotion Distress*

██ Under Florida law, an employer may only be held liable for the intentional tort of its employee if the employee was acting within the scope of his employment at the time he committed the tort. "Within the scope" means that the conduct must: 1) have been the kind he was employed to perform; 2) have occurred within the time

---

5. To the extent that complaining to Debi Cunningham might have constituted notice to AOL, the record reflects that Plaintiff did not complain to Cunningham until August 31, 1998, approximately one week before Fortin was fired. Therefore, even if complaining to Cunningham constituted notice, the company took prompt remedial action after being informed of the complaint.

and space limits of his employment; and 3) must have been activated at least in part by a desire to serve the employer. *Ayers v. Wal–Mart Stores, Inc.*, 941 F.Supp. 1163, 1168 (M.D.Fla.1996) (citing *Sussman v. Florida East Coast Properties, Inc.*, 557 So.2d 74, 75–76 (Fla.3d D.C.A.1990)).

Under Florida's common law of agency, "[a]lthough the scope of employment is considerably broader than explicitly authorized acts of the employee, it does not extend to cases in which 'the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do.'" *City of Green Cove Springs v. Donaldson*, 348 F.2d 197 (5th Cir.1965) (quoting *Weiss v. Jacobson*, 62 So.2d 904, 906 (Fla.1953)). Accordingly, sexual misconduct by employees is generally held to be outside the scope of employment and, therefore, is insufficient to impose vicarious liability on the employer. *See Nazareth v. Herndon Ambulance Service, Inc.*, 467 So.2d 1076, 1078 (Fla.5th D.C.A.1985); *see also Donaldson*, 348 F.2d at 202 (city not liable for sexual assault committed by officer who "stepped aside from his employment to accomplish his own, rather than the City's purpose"); *Agriturf Management, Inc. v. Roe*, 656 So.2d 954, 955 (Fla.2d D.C.A.1995) (employer not vicariously liable for employee's sexual assault because as a matter of law, fondling of child did not occur in furtherance of employer's business objectives).

Even assuming *arguendo* that Fortin's alleged conduct meets Florida's high standard for stating a prima facie case of intentional infliction of emotional distress, the Court concludes that there is no basis for holding AOL vicariously liable for Fortin's intentional tort. Although much of the conduct at issue in this case allegedly occurred at the workplace during work hours, Plaintiff must still be able to prove that Fortin's harassment somehow related to his job as a tech mail representative and was motivated by a desire to serve his employer. There is simply no basis in this record upon which a reasonable jury could reach either of these conclusions in this case.

## IV. Conclusion

For the reasons stated herein, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 22, filed July 25, 2001) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.** The clerk shall enter judgment in favor of the Defendant and against the Plaintiff and close the file.