A. C. ROSS, as District Director of Internal Revenue for the Collection District of Georgia, Appellant,

v.

E. F. HAYES and I. C. Peterson, d/b/a The Covered Wagon, Appellee.

No. 21134.

United States Court of Appeals
Fifth Circuit.

Oct. 30, 1964.

Crombie J. D. Garrett, Atty., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Charles L. Goodson, U. S. Atty., Slaten Clemmons, Asst. U. S. Atty., Atlanta, Ga., Robert N. Anderson, Atty., John B. Jones, Jr., Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellant.

James R. Harper, Atlanta, Ga., for appellee.

Before BROWN and BELL, Circuit Judges, and SPEARS, District Judge.

GRIFFIN B. BELL, Circuit Judge:

Taxpayers instituted this action for refund of cabaret taxes allegedly overpaid for the third quarters of 1953 and 1957. The United States counterclaimed for cabaret taxes allegedly due for 1954–56 and the first two quarters of 1957.[1] Section 4232 of the Internal Revenue Code of 1954 exempts from the cabaret tax imposed by § 4231 "any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental * * *." 26 U.S.C.A. §§ 4231, 4232. The government stipulated that taxpayers' establishment was a "dance hall" within the meaning of this section, and tax liability in this case therefore turns on whether the sale of food and refreshment was "merely incidental" to the operation of a dancing establishment. The trial court submitted this question to a jury which returned a special verdict finding that the sales were merely incidental. The government appeals, contending that the evidence compelled a finding as a matter of law that the sales were not incidental, and that consequently its motion for a directed verdict should have been granted.

Taxpayers operated a dance hall open three nights a week in Atlanta, Georgia, known as The Covered Wagon. A band for square dancing was provided and refreshments were sold. The admission charge was $1.05 per person, and patrons could purchase beer, Coca Cola, Seven-Up, ice, potato chips, pretzels, crackers, peanuts, and chewing gum. No meals or sandwiches were served. In every tax quarter here involved, the income from the sale of these refreshments constituted 44.4% of the total gross income of The Covered Wagon, the balance being derived from admission fees. The evidence was conflicting as to the relative size of the dance floor, but in considering whether the trial court should have directed a verdict, we must accept as true the testimony most favorable to the taxpayers. Standard Oil Company v. Foster, 5 Cir., 1960, 280 F.2d 912. This testimony indicated that the dance hall constituted 75 to 80% of the entire area. The dance floor at The Covered Wagon could accommodate 200 to 225 persons, whereas the seating capacity of the establishment was only 160. Moreover, only 100 seats were at booths or tables; the remaining 60 were on benches alongside the dance floor. The Covered Wagon was open for business one hour before the band began to play, but during this hour, a nickelodeon was provided for dancing. Only two waitresses were employed, and they did not have time to provide prompt table service or to solicit drinks. They were principally occupied with clearing tables, and most of the customers waited on themselves.

The government contends, first, that when the relative income from refreshments is as high as 44.4%, refreshment sales are as a matter of law not merely incidental irrespective of any other factors tending to favor the taxpayers. Alternatively, the government argues that if the refreshment ratio is itself insufficient to compel a directed verdict, other factors reinforce its position that the refreshment sales were as a matter of law not incidental. We are unable to accept either contention, and hold that the lower court properly refused to direct a verdict for the government.

It is clear that the determination whether refreshment sales are incidental does not turn solely on the percentage of income attributable to such sales, but must be made with reference to the nature of the total operation of the establishment in question. As stated by this court in Stevens v. United States, 5 Cir., 302 F.2d 158, 164:

"There is no one simple test to determine when the sale of refresh-

1. The fourth quarter of 1953 is not involved in this case. However, the parties have agreed that the taxability of the proceeds of sale of refreshments made during that period will be governed by the outcome of this case.

ments is 'merely incidental.' While the relative percentages of gross receipts is probably the most important single index, other factors must also be considered. Both the House and the Senate Reports accompanying the proposed 1951 amendment contained this statement: 'This determination will be made by reference to the overall operation of the establishment, including such factors as the relative income from the several activities over a period of time, the relative portion of space devoted to the various activities, the type of refreshments served or sold, the scope and character of the entertainment furnished, and the hours of operation.' "

There may be situations where the percentage of gross income attributable to refreshment sales will be so high that this factor alone will compel a directed verdict, but such a situation is not presented here. Cf. Jones v. Fox, D.Md., 1957, 162 F.Supp. 449, 461–462. The legislative history of the 1951 amendment, embodying the "merely incidental" exception to the cabaret tax, makes it plain that Congress intended that 27% should be considered incidental. The Report of the Committee on Ways and Means (H.Rep. No. 586, 82 Cong., 1st Sess., p. 126) states:

"The purpose of this amendment is to make it clear that the principles set forth by the district court in the case of Geer v. Birmingham [D.C.] (88 F.Supp. 189) are controlling in the determination of whether the establishment involved is operating as a cabaret or as a dance hall, and to avoid the broad construction placed upon the statute * * * in the court of appeals decision reversing the decision of the district court in the Geer case (Birmingham v. Geer [8 Cir.], 185 F.2d 82), which require that dance halls and similar establishments be taxed as cabarets, even though the serving or selling of food, refreshments, or merchandise is merely incidental." U.S.Code Congressional and Administrative News 1951, p. 1915.

In the Geer case, 27% of gross income was derived from the sale of refreshments. The district court held that the cabaret tax did not apply, but, as stated supra, was reversed by the court of appeals. In Stevens v. United States, supra, and Luna v. Campbell, 5 Cir., 1962, 302 F.2d 166, where income percentages were 62.7 and 60.8 respectively, we held that directed verdicts for the government were proper. However, even in these cases, factors other than income percentages were considered and relied on. Thus, there is no support for the government's position that the 44.4% figure alone entitles it to a directed verdict.[2]

We turn, therefore, to a consideration of other relevant factors. The Covered Wagon was open only three nights a week. There was testimony on which the jury could find that the dance floor constituted 75 to 80% of the total floor space. The dance floor could accommodate 200 to 225 persons, whereas only 160 persons could sit down, and only 100 of these could sit at tables or booths. No hard liquor, meals, or sandwiches were provided. There were no floor shows or similar entertainment which would encourage customers to sit and eat and drink, rather than dance. Customers could dance either to the band or the nickelodeon during the entire time that The Covered Wagon was open. The waitresses did not solicit the sale of refreshments and were unable to provide table service. From these facts, it seems

2. See Billen v. United States, 10 Cir., 1960, 273 F.2d 667, and Landau v. Riddell, 9 Cir., 1958, 255 F.2d 252, affirming decisions for the government in cases involving income percentages of 48 and 47, respectively. The question of wheth-er the government was entitled to a directed verdict was not presented in either case. Moreover, the overall factual situation in these cases differed from that presented here.

clear that the opportunity to eat and drink offered little or no attraction to the patrons of The Covered Wagon. They came to square dance. Thus, when the taxpayer's overall operation is considered in conjunction with the 44.4% income figure, we hold that the lower court correctly submitted to the jury the question of whether the sale of refreshments at The Covered Wagon was "merely incidental" within the meaning of § 4232 of the Internal Revenue Code.

■ The government further contends that even if its motion for a directed verdict was properly refused, it was entitled to an instruction that the percentage of income figure was the "most important" factor to be considered by the jury. Reliance is placed on our statement in Stevens v. United States, supra, that "the relative percentages of gross receipts is probably the most important single index." The trial court did charge that the percentage of gross receipts attributable to refreshments was "important,' and did not similarly describe any of the other factors mentioned in its charge. The Stevens case requires nothing more.

Affirmed.