406 F.2d 906
 Ralph SHUTTER and Robert Shutter, d/b/a Shutter Bros. Ballroom, Plaintiffs-Counter-Defendants-Appellants,
v.
UNITED STATES of America, Defendant-Counter-Plaintiff-Appellee.
 No. 16923.
 United States Court of Appeals Seventh Circuit.
 January 27, 1969.
 
 Joseph Mack, Nathan Bennett, Chicago, Ill., for appellants.
 Richard M. Roberts, Acting Asst. Atty. Gen., Tax Division, Ann E. Belanger, Attorney, U. S. Department of Justice, Washington, D. C., Thomas A. Foran, U. S. Atty., Chicago, Ill., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attorneys, Department of Justice, Washington, D. C., for appellee.
 Before HASTINGS, KILEY and KERNER, Circuit Judges.
 KERNER, Circuit Judge.
 
 
 1
 Plaintiffs-appellants (Shutter Brothers) appeal from a judgment entered against them without a jury in the sum of $64,988.12 in the District Court in favor of the United States.
 
 
 2
 The action arises from the assessment of federal excise taxes under Section 4231(6) of the Internal Revenue Code of 1954. The Shutter Brothers operated a ballroom-lounge. The District Director assessed taxpayers $46,172.27 for cabaret taxes from June 30, 1962, to March 31, 1965, plus a penalty of $6,957 and interest of $7,349.54, and allowed a credit of $667.09. A payment of $15.70 was made by taxpayers and the government collected $3,142.16 by a levy on taxpayers' bank account. Taxpayers filed a claim for refund for the last two items. The claims were rejected by the District Director, and the taxpayers filed suit to recover these amounts in March, 1967. The United States filed a counterclaim in the sum of $56,643.52 for the unpaid portion of the assessment.
 
 
 3
 The parties stipulated as to the pertinent facts. The Shutter Bros. Ballroom is located at 7740 South Stony Island Avenue in Chicago and is open for dancing on Wednesday, Friday, Saturday, and Sunday evenings with live music for the patrons. Its capacity is 1035 persons. An admission fee is charged. The building includes a large ballroom containing approximately 130 theatre-type seats, a lobby, check-room and three bars. The lobby is furnished with sofas and chairs that will seat approximately 45 persons. One of the bars has no seating capacity but will accommodate from 12 to 14 people standing. Another bar, located at the west end of the building, is about 40 feet long with three cash registers. In the northwest corner of this barroom there is also a stand-up bar about 12 feet long. No seating is available at either of these bars. The large barroom contains 17 booths that accommodate four persons each and 23 tables seating four persons each.
 
 
 4
 These bars have available for sale soft drinks, wine, beer and liquors. The purchase of these refreshments is optional and cost as follows:
 
 
 5
 1 oz. whiskey 50¢
 1 oz. gin 50¢
 1 oz. vodka 50¢
 highball 50¢
 wine 35¢ per glass
 beer 15¢ per glass
 
 
 6
 The taxpayers also sell candy and gum. No food is sold at any time. Bars and check rooms are operated by the plaintiffs, wherein the gross revenue inures to them.
 
 
 7
 Though not stipulated, defendant-appellee introduced evidence of a balcony bar and cocktail lounge that would accommodate approximately 85 persons at bar stools and tables.
 
 
 8
 The overall seating capacity is 420 with some additional spaces available at stand-up positions at the bars. The total area of the ballroom is 16,178 square feet, 9,102 square feet in the dancing area and 3,758 square feet in the bar and lounge area. The balance of 3,318 square feet is allocated to the cloak room, office and rest rooms.
 
 
 9
 The legal question involved is whether the receipts from the operations of the ballroom-lounge are subject to the "cabaret" tax under Section 4231(6) or fall within the exception of Section 4232(b) as the selling of food and refreshments is merely incidental to the general operation.
 
 
 10
 Section 4231 [as amended by Sec. 1, Act of April 9, 1960, P.L. 86-422, 74 Stat. 41] Imposition of Tax.
 
 There is hereby imposed:
 
 11
 (6) Cabarets. — A tax equivalent to 10 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. * * *
 
 
 12
 Section 4232 of the Code defines cabaret or other similar places as follows:
 
 
 13
 Section 4232 [as amended by Sec. 131(d), Excise Tax Technical Changes Act of 1958, P.L. 85-859, 72 Stat. 1275]. Definitions.
 
 
 14
 (b) Roof Garden, Cabaret, or Other Similar Place. — The term "roof garden, cabaret, or other place," as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshments, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a "roof garden, cabaret, or other similar place." Such term does not include any place if —
 
 
 15
 (1) no beverage subject to tax under chapter 51 (distilled spirits, wines, and beer) is served or permitted to be consumed;
 
 
 16
 (2) only light refreshment is served;
 
 
 17
 [Emphasis added.]
 
 
 18
 Judge Wisdom of the Fifth Circuit in Stevens v. United States, 302 F.2d 158 (5th Cir. 1962), reviewed the entire historical background of the entertainment tax of 1917 and the amendments of 1939, 1951, 1954 and 1958. One of the first cases to contest this tax was Avalon Amusement Corp. v. United States, 165 F.2d 653 (7th Cir. 1948), in which the Court stated "[A]n establishment charging admission for dancing privileges and where refreshments are sold in connection therewith is a `roof garden, cabaret, or other similar place.'" Id. at p. 654. In Geer v. Birmingham, 88 F.Supp. 189 (N.D.Iowa, 1950), reversed, 185 F.2d 82 (8th Cir. 1950), cert. denied, 340 U.S. 951, 71 S.Ct. 571, 95 L.Ed. 686 a case with facts similar to Avalon, the District Court held the tax inapplicable to ballrooms where refreshments were also sold. Congress in amending Section 4232(b) in 1951 followed the District Court's opinion in Geer. See italicized portion supra.
 
 
 19
 Judge Wisdom, in Stevens, established certain criteria to assist in the determination of taxability. "[T]he test is whether the sale of refreshments is subordinate. Where such sale becomes important in its own right as a significant part of the attraction of the establishment, the exemption from the cabaret tax will not apply. * * *.
 
 
 20
 There is no one simple test to determine when the sale of refreshment is `merely incidental.' While the relative percentages of gross receipts is probably the most important single index, other factors must also be considered. Both the House and Senate Reports accompanying the proposed 1951 Amendment contained the statement: `This determination will be made by reference to the overall operation of the establishment, including such factors as the relative income from the several activities over a period of time, the relative portion of space devoted to the various activities, the type of refreshments served or sold, the scope and character of the entertainment furnished, and the hours of operation.'" 302 F.2d at 164.
 
 
 21
 Applying these criteria, this Court cannot come to any other conclusion except that the sale of refreshments in the Shutter Bros. Ballroom is not "merely incidental." While the total capacity allowed within the premises by the City of Chicago Commissioner of Buildings is 1035 persons, the average attendance found by the trial court is between 400-450 with an occasional attendance of 650. The seating capacity for refreshment service is, under all usual circumstances, 420 and can be increased if needed. The relationship between usual attendance and seating capacity is relatively equal.
 
 
 22
 The dancing space is 9,102 square feet and the bar space 3,758 square feet, a relationship of 59% for dancing and 41% for the several bar facilities. The relationship of gross receipts in the years 1962 through 1965 from admissions to sales is approximately 48% for admission, 47% from sales and the remaining 5% is income from the checking service.[1]
 
 
 23
 Plaintiffs-appellants' receipts from admissions and sales being almost equal, most certainly it can be said the sales receipts exceed the "merely incidental" category contained in Section 4232 of the Code. The conclusion becomes more compelling when it is realized that 59% of the area developed 48% of the receipts and 41% of the area resulted in 47% of the receipts.
 
 
 24
 Plaintiffs-appellants cite Geer v. Birmingham, 88 F.Supp. 189 (N.D.Iowa 1950), and Ross v. Hayes, 337 F.2d 690 (5th Cir. 1964), as cases in point. In Geer no liquors were sold and the lounge space served only 17% of the dance floor capacity. In Ross a jury found that no liquors were served, the dancing area comprised 80% of the facility and, at most, only one half of the patrons could be seated at any one time. The case before this Court was tried without a jury and is easily distinguished.
 
 
 25
 Plaintiffs-appellants Shutters next contend that in the operation of their establishment they followed the example of the Treasury Department model for a non-taxable ballroom. The establishment in the model did not sell liquors, wines and beers and is therefore excluded.
 
 
 26
 The Shutters contend the trial judge erred in granting the government's motion for dismissal of plaintiffs' petition under Rule 41(b). The trial was had without a jury and the judge as the trier of the facts may determine the facts and enter judgment should the evidence justify such decision. The Shutters are required under the law to prove a prima facie case to avoid dismissal. The trial court, having before it a written stipulation of facts, the testimony of witnesses and various documents in evidence, could well find that petitioner did not make the necessary prima facie showing and could properly grant the government's motion to dismiss and the motion for judgment on its counterclaim. Huber v. American President Lines, 240 F.2d 778 (2d Cir. 1957); 5 Moore, Federal Practice, ¶ 41.13 [3] and [4] [2d Ed. 1968].
 
 
 27
 Under the rule of Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), we must affirm the District Judge unless we can say that his basic findings were clearly erroneous under Federal Rule of Civil Procedure 52(a). It would serve no purpose in reviewing all of the facts presented in the trial, especially since most of the pertinent facts are stipulated. Upon the record before us, the District Judge was warranted in his findings of facts and conclusions of law.
 
 
 28
 The judgment of the District Court is affirmed.
 
 
 29
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 During the periods involved the plaintiffs derived the following income from its various activities:
 Gross Percent
 Gross Income Gross Percent of Income
 Income from Income of Income from
 from Refreshments from Total from Refreshments
Year Admissions Wardrobe Income Admission
_________________________________________________________________________________
1962 $53,730.14 $53,371.75 $5,848.76 $112,950.65 47.57% 47.25%
1963 80,585.44 75,081.48 8,501.20 164,168.12 49.09% 45.73%
1964 75,169.90 69,393.51 8,109.70 152,673.11 49.24% 45.45%
1965 14,763.00 16,197.50 1,637.50 32,597.50 45.29% 49.69%