PER CURIAM:
We vacate and withdraw the previous opinion dated November 13, 1998, 160 F.3d 688 (11th Cir.1998), and substitute the following opinion. Vickie K. Coates appeals the district court’s order granting summary judgment to defendant Sundor Brands, Inc. (“Sundor”) on her claim of hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Coates argues that the district court erred in finding no genuine issue of material fact as to whether Sundor had responded promptly and appropriately to Coates’s complaints of sexual harassment. We affirm.
FACTS
Because this appeal involves the grant of a motion for summary judgment, we review the facts in the light most favorable to Coates, who is the non-moving party in this case. Vicki Coates began working as a forklift operator in the shipping and receiving department of Sundor Corporation, an Atlanta-based Proctor and Gamble (“P&G”) subsidiary, on January 21, 1992. In approximately January of 1994, Coates was transferred to the storeroom, where she worked closely with plant buyer Emmett (Ernie) Long, spending approximately one-fourth of her workday in Long’s office. During that time, the pair was isolated from other employees. Coates and Long were supervised by Nancy Christman, who in turn was supervised by technical systems manager Lloyd McLean.
On October 19,1994, Coates confided in coworker Mike Lee, who was also an ordained *1363 minister, that Long had been engaging in behavior toward her that included offering her money for sex, calling her at home and leaving unwelcome amorous messages, and threatening to kidnap her and take her to Arkansas. Lee immediately brought Coates’s allegations to the attention of Mike Sanders, Sundor’s Human Resources Manager, although at Coates’s request Lee did not identify her or Long by name. During this meeting with Sanders, Lee agreed to speak to the harasser about the allegations, which he did that same day. Coates had been initially reluctant to bring her allegations to the attention of management, but after Lee spoke to Long, Lee convinced Coates to accompany him to Sanders’s office to speak to Sanders directly about the problem.
Despite Lee’s interview with Long, Long’s harassment continued until September 1995. In the months following Coates’s meeting with Sanders, Sanders several times asked Coates how things were going. In response to each inquiry, Coates indicated that things were fine. She did not mention the harassment again to Sanders or to Lee.
Sometime between November 1994 and January 1995, Coates approached Christman with the intention of telling her of the harassment. Because Coates had previously discussed personal matters with Christman, Christman asked Coates if the matter she wished to discuss was personal or professional. When Coates responded that it was personal, Christman said that she was too busy to talk with her at that time about personal matters. At no point during this exchange did Coates convey to Christman that the issue she wished to discuss concerned sexual harassment.
In March or April of 1995, Coates met with McLean, who was preparing for an imminent departure to Japan on business. At this time, Coates talked to him about the work being done in the storeroom, about proposed strategies for improving productivity in her area, and about her own career prospects. At some point 'during this meeting, she showed McLean a note she had received that read: “From the Desk of Ernie Long, Hey Sweetheart $100 for 45 minutes of hugging and kissing or $100 for stop loving Vickie guarantee.” In her deposition testimony, Coates does not elaborate on any further conversation between her and McLean on this issue.
On September 17, 1995, Coates told Blanche Sullivan, a P&G consultant who was visiting the Sundor plant, about the harassment. Sullivan encouraged her to speak to Christman or Sanders, and later that same day or the next morning, Coates reported the harassment to Christman. Immediately after hearing from Coates, Christman and Earl Graham, another manager, confronted Long. After some discussion, Christman informed Long that he was suspended without pay pending an investigation and that he was not to contact Coates. Later that day, Long resigned. On September 21, 1995, Coates took a medical leave of absence. She resigned on March 21,1996.
Coates subsequently filed suit against Sun-dor and Long in the Northern District of Georgia, alleging that she had been subject to hostile work environment sexual harassment in violation of Title VII.[1] In assessing the merits of Sundor’s motion for summary judgment, the magistrate judge analyzed Coates’s claim according to the test for employer liability for a Title VII violation established in Henson v. City of Dundee, 682 F.2d 897, 903-05 (11th Cir.1982). Although Sun-dor conceded that Coates had suffered hostile work environment sexual harassment, the magistrate found that “a reasonable jury could only conclude that [Sundor] took prompt and remedial action [in response to the plaintiffs complaints].” The district court adopted the magistrate’s recommendations, and granted summary judgment to Sundor. Coates appealed.
DISCUSSION
In the district court, Sundor conceded that Long subjected Coates to hostile work environment sexual harassment, contesting only its own liability on the basis that it took prompt action to abate the problem. The issue we confront in this case, therefore, is *1364 whether Sundor had adequate notice of the harassment and, if so, whether it took adequate remedial steps to abate it.
This inquiry is made easy by the fact that Sundor’s own promulgated sexual harassment policy clearly specified the steps a victimized employee should take to alert the employer of harassment. Specifically, the policy directs that “[a]ny employee who feels he or she is being sexually harassed should immediately contact their line manager, Personnel Contact, or other manager with whom they feel comfortable.” McLean Dep., Ex. 1.
With this policy, Sundor itself answered the question of when it would be deemed to have notice of the harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures. Our task is thus to determine whether Coates made reasonably sufficient use of the channels created by Sundor’s policy to put Sundor on notice of the ongoing harassment. Only if we determine that adequate notice of the harassment was given to Sundor do we then move to determine whether Sundor responded reasonably to her complaint. To make this determination, we examine the encounters between Coates and plant supervisors which Coates offers as evidence that adequate notice was given.

Conversation with Mike Sanders

In October 1994, Coates confided in co-worker Mike Lee that Long was sexually harassing her. Lee went to Human Resources Manager Mike Sanders with Coates’s allegations, but because Coates had asked that what she told him remain confidential, Lee did not reveal to Sanders either her name or the name of the harasser. Lee and Sanders agreed that Lee, not Sanders, would strongly admonish the harasser. At Sanders’s request, Lee also urged Coates to bring the complaint to Sanders in person, which she did that same day. During this meeting, Coates expressed her desire that the harassment stop and also that no steps be taken at that time to alter current work assignments. This meeting was the last time Coates raised the issue of the harassment with Sanders, and she responded to his subsequent general inquiries as to how things were going with assurances that all was well. •
This set of encounters leaves no doubt that Sanders was on notice of the harassment in October 1994. On these facts, however, we cannot say that Sanders failed to respond reasonably to the complaint. It is true that Sanders did not speak to Long himself, but he was given no reason at the time to-doubt either that Lee had successfully conveyed to Long the message Lee and Sanders agreed should be conveyed, or that Coates was satisfied with this resolution of the problem, since she initially sought Lee’s counsel.[2] The fact that the parties now disagree as to whether Lee actually clearly got the message across to Long that day does not change our analysis. The appropriate inquiry at this stage is to ask what measures Sanders reasonably believed had been taken to address the problem.
We do not suggest that it is appropriate to delegate to non-supervising employees the task of confronting harassers. Under the facts of this case, however, Coates indicated to Sanders that if Lee’s discussion with Long led to a cessation in the harassment, she would feel that her complaint had been adequately addressed. Although the harassment continued, Coates gave Sanders no indication that the agreed-upon strategy had failed, instead assuring him when he asked how things were going that everything was fine. It was not unreasonable for Sanders to conclude on this basis that Lee’s talk with Long had ended the matter and that no further action was necessary on his part.

Conversation vnth Nancy Christman

Coates also asserts that she placed Sundor on notice by complaining to her direct supervisor, Nancy Christman, at some point in late 1994 or early 1995. The deposition testimony supporting this assertion reflects that Coates approached Christman and asked to speak with her. Christman inquired as to whether the matter was personal or professional, and when Coates replied that it was personal, Christman responded that she was too busy to discuss personal matters. *1365 At no time did Coates indicate that she wished to lodge a sexual harassment complaint.
We cannot view this encounter as having put Christman on notice that Coates was being sexually harassed. Coates never mentioned the harassment. Her response that the problem was personal and not professional was sufficient to create a reasonable belief on Christman’s part that Coates’s problem did not bear on her work life and thus was not a problem Christman needed to address. Christman’s inaction as a result of this encounter was therefore not unreasonable, and does not a support an inference that Sundor failed to act to abate harassment in the face of adequate notice.

Conversation with Lloyd McLean

Sometime in March or April of 1995, Coates approached plant manager Lloyd McLean as he was preparing to leave for a business trip to Japan. At that time Coates spoke to him about the work being done in the storeroom, about proposed strategies for improving productivity in her area, and about her own career prospects. She also showed him a note she had received from Long, which read: “From the Desk of Ernie Long, Hey Sweetheart $100 for 45 minutes of hugging and kissing or $100 for stop loving Vickie guarantee.” In her deposition testimony, Coates does not elaborate on any further conversation between her and McLean on this issue. Nor does the record indicate that McLean took any action with respect to the harassment in the wake of this encounter.
Coates’s own deposition testimony clearly supports the conclusion that the substance of her discussion with McLean at this meeting did not put McLean on notice that she was being sexually harassed by Long. She described the exchange between them as follows:
[COATES]: I ... went over and talked to him about where we were in relation to finishing inventory in the storeroom. And I showed him the note that [Long] had just [given] me where he offered me a hundred dollars if I could get him to stop loving me or something to that effect.
Q: Okay. And what did Mr. McLean say to you?
[COATES]: He was very pleased at the progress we were making in the storeroom. We had just received parts from Mount Dora, Florida and we were coming along pretty fast. I wanted to talk to him more — I wanted him to be able to get back with me and talk to me more about the TPM process and what we were going to be doing in the storeroom. He told me what a good job he thought I was doing and I showed him the note. And then he was late for a meeting.
Q: He said to you I’m late for a meeting?
[COATES]: He looked at his watch and says oh, Vickie, excuse me but I am late for a meeting. He says you know I’m going to Japan with Bob and I’ve got to get up there. Maybe we can pick up on this conversation later on.
PL Dep. at 47. McLean’s deposition testimony also supports the conclusion that Coates’s primary purpose for seeking out McLean at this time was to discuss not the harassment, but rather her career and other matters related to inventory processing in the store room.
Under these facts, McLean’s failure following this exchange to take prompt action to arrest Long’s harassment of Coates was not unreasonable. Even taking all Coates’s allegations as true, nothing Coates said to McLean indicated that her receipt of the note represented a problem about which she was concerned or that required McLean’s immediate attention. Had Coates indicated to McLean that the note was only the latest in an ongoing pattern of sexually harassing behavior toward Coates by Long, McLean’s subsequent failure to address the problem may well have indicated a failure, in the face of adequate notice, to take reasonable care to prevent and correct promptly any harassing behavior. As it was, Coates did not, in the context of the conversation, adequately apprise McLean of the dimensions of the problem or even that there was a problem that required his attention, and he could not therefore reasonably have been expected to act to address it.

Conversation with Blanche Sullivan

It was not until six months after Coates’s meeting with McLean, on September 17, 1995, that Coates confided in P&G consultant Sullivan about the harassment, *1366 and even then, she requested that Sullivan refrain from mentioning it to Christman. Sullivan recommended that Coates speak to Christman. Coates did so, as did Sullivan despite Coates’s request for confidentiality. Long was immediately suspended without pay pending an investigation. He resigned before the day was out. It is thus impossible to say that Christman’s action in response to Coates’s complaint was anything but prompt and effective.
CONCLUSION
We are not unmindful of the enormous difficulties involved in lodging complaints about discrimination in the workplace, including complaints of sexual harassment. We also recognize the great psychological burden it places on one who is already the victim of harassment to require that person to complicate further his or her life with the ramifications, both legal and otherwise, of making a complaint. Federal law has now attempted to correct the problem of workplace discrimination, but it cannot be done without the cooperation of the victims, notwithstanding that it may be difficult for them to make such efforts. When an employer has taken steps, such as promulgating a considered sexual harassment policy, to prevent sexual harassment in the workplace, an employee must provide adequate notice that the employer’s directives have been breached so that the employer has the opportunity to correct the problem.
At the same time, the power and influence of an employer over the atmosphere in a workplace cannot be overstated. The whole point of recognizing hostile work environment sexual harassment as a form of workplace discrimination under Title VII is that employees are entitled to a work environment that allows them to function effectively and to do the work they were hired to perform to the best of their ability without having to “run a gauntlet of sexual abuse” or face other forms of discrimination. Henson, 682 F.2d at 902; see also id. (“Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality.”) (quoted in Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). When an employee’s ability to perform his or her job is compromised by discriminatory acts including sexual harassment and the employer knows it, it is the employer that has the ability, and therefore the responsibility, to address the problem, whether the harasser is a supervisor, a co-worker, a client, or a subordinate. See Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1515 (11th Cir.1989) (“[T]he capacity of any person to create a hostile or offensive environment is not necessarily enhanced or diminished by any degree of authority which the employer confers upon that individual”) (quoting Henson, 682 F.2d at 910) (internal quotation marks omitted.).
On this record, however, we necessarily conclude that no genuine issue of material fact exists to support a finding that Coates acted reasonably to put Sundor on notice of the problem or that, when notice was given, Sundor responded unreasonably to her complaint. The district court’s grant of summary judgment to the defendant is therefore AFFIRMED.

. Coates’s complaint also included several state law claims against both Sundor and Long. The district court dismissed these claims without prejudice when it granted Sundor’s motion for summary judgment.

. Because Lee is an ordained minister, many Sundor employees look to him for guidance with their personal problems.