Cynthia W. LUNDE, Plaintiff,

v.

BIG B, INC., d/b/a CVS Pharmacy
# 4927 and Robert Hassett,
Defendants.

No. CIV.A. 99–M–207–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 27, 2000.

Joseph (Jay) Brady Lewis, Law Offices of Jay Lewis, Montgomery, AL, Terry R. Smyly, Montgomery, Al, for Plaintiff.

Terry R. Smyly, Montgomery.

Arnold W. Umbach, III, Bradley, Arant, Rose & White, LLP, Birmingham, AL, for Defendants.

## ORDER

McPHERSON, United States Magistrate Judge.

The plaintiff, Cynthia Lunde, filed her civil complaint in this action on 2 March 1999 against CVS Stores, Inc.,[1] and Robert Hassett ["Hassett"] (Doc. # 1). The plaintiff contends that during 1997 and 1998, the defendants discriminated against her on the basis of sex (Doc. # 1). Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (West 1998).

This cause is now before the court on the defendants' motion for summary judg-

---

1. In the motion for summary judgment, Big B, Inc., d/b/a CVS pharmacy # 4927 ["Big B"] stated that it was improperly named "CVS Stores, Inc." in the complaint (Doc. # 12, p. 1). The plaintiff amended her complaint to identify Big B. Inc., as a defendant (Doc. # 21).

When the plaintiff began her employment with Big B, she worked at the REVCO located on Madison Avenue (Doc. # 14, Lunde Dep., p. 25). Apparently, Big B converted that REVCO to a CVS. Currently, the plaintiff is employed by Big B at the CVS located on Coliseum Boulevard (Doc. # 14, Lunde Dep., p. 26).

ment (Doc. # 12) and the plaintiff's response (Doc. # 18). For the reasons that follow, the court orders that the motion is GRANTED in part and the case be DISMISSED for lack of jurisdiction.

## I. FACTS[2] AND PROCEDURAL HISTORY

In March of 1997, the plaintiff was employed by Big B at the REVCO located on Madison Avenue in Montgomery, Alabama (Doc. # 14, Lunde Dep., p. 25). Specifically, the plaintiff was a Pharmacy Technician with various responsibilities, including customer and pharmacy service (Doc. # 14, Lunde Dep., pp. 31–32).

The plaintiff worked closely with two to three other employees at a time, including a pharmacist (Doc. # 14, Lunde Dep., pp. 34, 59). In fact, the plaintiff usually greeted the employees at the pharmacy with "hello, family" (Doc. # 14, Lunde Dep., p. 60). According to the plaintiff, "[t]he pharmacy was so small, if you apologized for every time you bumped into somebody, we would spend eight hours of the day saying I am sorry." (Doc. # 14, Lunde Dep., p. 68).

The plaintiff considered one of the pharmacists, Hassett, to be her friend (Doc. # 14, Lunde Dep., pp. 36, 57), and in fact hugged him on two occasions. She discussed her sexual activity with him and with another co-employee on approximately ten occasions (Doc. # 14, Lunde Dep., pp. 73–74). Hassett never initiated the conversations on sexual activity (Doc. # 14, Lunde Dep., p. 75). The plaintiff even told Hassett that the two of them would have made a good pair (Doc. # 14, Lunde Dep., p. 86).

The plaintiff alleges that in September of 1997, Hassett began to make sexually

suggestive comments and look at the plaintiff in a lascivious way which made the plaintiff extremely uncomfortable (Doc. # 14, Lunde Dep., p. 110). The plaintiff described the sexually suggestive comment allegedly made by Hassett on a daily basis as:

> A handshake with your finger rubbed in the palm where the way I was brought up, that is meant, you know, I would like to—
>
> *   *   *   *   *   *
>
> Well, the kind of—the bringing up I had, it meant I want to f __ you. [omission the Court's]

(Doc. # 14, Lunde Dep., p. 112–13). Although she felt intimidated by Hassett's behavior, the plaintiff did not discuss the meaning of this handshake with Hassett. Nor did she tell him to stop, or report his behavior to anyone else at the pharmacy (Doc. # 14, Lunde Dep., p. 114).

In December of 1997, Hassett allegedly pushed against the plaintiff in a sexually harassing manner (Doc. # 14, Lunde Dep., p. 118). Shortly after this incident, Hassett grabbed her on the back of the arm (Doc. # 14, Lunde Dep., p. 119). When she told him that this was causing her pain, he allegedly replied that it "can't be hurting" (Doc. # 14, Lunde Dep., p. 119). According to the plaintiff, Hassett told her, on a weekly basis, "[l]ay down, I think I love you" (Doc. # 14, Lunde Dep., p. 115). However, the plaintiff neither told Hassett that she objected to his making those comments nor reported Hassett's statement to anyone in the pharmacy (Doc. # 14, Lunde Dep., p. 116).

The plaintiff did not report Hassett's sexually harassing behavior to Mike Berry ["Berry"], the store manager, until April of 1998, when she advised Berry that Hassett

---

**2.** In the factual portion of her response to the defendants' motion for summary judgment, the plaintiff stated that:

> There are no disputed facts in this case. While the defendants' statement of facts includes a liberal use of the word "claims," as in "Plaintiff claims that...," no evidence has been offered to contradict those

"claims." The facts must be taken as true, and they must be construed in a light most favorable to Plaintiff. Having said that, Plaintiff adopts the defendants' statement of facts, but would add certain additional facts as part of her argument below.

(Doc. # 18, p. 1).

was grabbing the back of her arm (Doc. # 14, Lunde Dep., pp. 148–149). Without reporting Hassett's sexual comments to Berry, she asked Berry to speak with Hassett about touching her arm without revealing her identity to Hassett (Doc. # 14, Lunde Dep., pp. 144–45).

In May of 1998, Berry allegedly asked the plaintiff about the status of "things" in the pharmacy (Doc. # 14, Lunde Dep., p. 144). The plaintiff responded that things were "pretty good" (Doc. # 14, Lunde Dep., p. 143). Berry replied "that is good ... because we won't put up with any kind of sexual harassment" (Doc. # 14, Lunde Dep., p. 143).

On 17 June 1998, Hassett touched the plaintiff's left buttock in a manner that she described as a "pat" (Doc. # 14, Lunde Dep., p. 152–53). Hassett apologized to the plaintiff several times that day and stated to the plaintiff "you know I didn't mean what I did" (Doc. # 14, Lunde Dep., p. 160). The incident occurred between 2:00 and 3:00 p.m., but the plaintiff did not leave the pharmacy until 6:00 p.m., her normal quitting time (Doc. # 14, Lunde Dep., p. 165).

On the following day, i.e., 18 June 1998, the plaintiff informed Stanley Smith ["Smith"], the assistant store manager, that she would not report to the pharmacy that day because she had "strep throat" and that Hassett had touched her buttock on 17 June 1998 (Doc. # 14, Lunde Dep., p. 168–70). Smith allegedly told the plaintiff that she needed to speak with Berry (Doc. # 14, Lunde Dep., p. 169). In a telephone conversation on that evening, the plaintiff told Berry that Hassett had touched her body (Doc. # 14, Lunde Dep., p. 173).

Berry told the plaintiff that she would be moved to the front of the store temporarily so that she did not have to work in the pharmacy with Hassett (Doc. # 14, Lunde Dep., p. 173). However, the plaintiff told Boyce Foster, the district manager, that she had decided that she did not wish to be in the front of the store (Doc. # 14, Lunde Dep., pp. 175–76; Foster Decl., ¶ 2).

On 22 June 1998, the plaintiff met with Foster and Allen Browning ["Browning"], pharmacy supervisor (Doc. # 14, Lunde Dep., p. 186; Foster Decl., ¶ 7 ). The plaintiff prepared a statement which recounted the incident on 17 June 1998 (Doc. # 14, Lunde Dep., p. 188). Foster and Browning told the plaintiff that they would also speak with Hassett regarding the touching incident and that Big B would reprimand Hassett and counsel him on sexual harassment (Doc. # 14, Lunde Dep., pp. 192, 228).

At the meeting with Foster and Browning, the plaintiff said that she wanted to be moved out of the store, but she failed to request a transfer to a specific location (Doc. # 14, Lunde Dep., pp. 193–194). Two to three days after this meeting, Browning called the plaintiff at home and told her that she would be transferred to the store on Coliseum Boulevard, approximately one mile away from the Madison Avenue location (Doc. # 14, Lunde Dep., p. 201; Foster Decl. ¶ 8). The plaintiff did not object to that location and was transferred on 28 June 1998 (Doc. # 14, Lunde Dep., p. 202). Although the plaintiff did not work from 21 to 28 June 1998, Big B paid her salary for that week (Doc. # 14, Foster Decl. ¶ 8).

The plaintiff sued Big B under Title VII for hostile environment and quid pro quo sexual harassment (Doc. # 21, p. 6). Further, the plaintiff filed the following causes of action based on state law against Hassett: intentional infliction of emotional distress, invasion of privacy, and assault and battery (Doc # 1, pp. 7–8). The defendants filed a motion for summary judgment on the plaintiff's claims of sexual harassment, intentional infliction of emotional distress, and invasion of privacy (Docs.# 12, 13). The plaintiff has filed her response in opposition to the defendants' motion (Doc. # 18).

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law". *Fed.R.Civ.P. 56(c)*. On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.[3] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996).

In responding to a motion for summary judgment, the nonmoving party must do more than restate his conclusory allegations. Thus, consideration of a summary judgment motion does not lessen the burden on the nonmoving party, i.e., the nonmoving party still bears the burden of coming forth with sufficient evidence on each element that must be proved.[4] *Earley v. Champion Intern. Corp.*, 907 F.2d

**3.** The Supreme Court explained that:
[T]he the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

**4.** "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury.... [the court must] grant of summary judgment [for the defendant]." *Earley*. 907 F.2d at 1080 (citations omitted). In *Earley*, the Court of Appeals further emphasized:
"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.
\*   \*   \*   \*   \*   \*
"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omit-

1077, 1080 (11th Cir.1990); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## III.  DISCUSSION

### A.  Sexual Harassment [5]

■ "In a sexual harassment action, a plaintiff may establish a violation of Title VII by proving that the harassment either was directly linked to the grant or denial of an economic quid pro quo or created a hostile work environment." *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1551–52 (11th Cir.1997) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65–66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The Supreme Court recently established that employers are vicariously liable for the actions of their supervisory personnel when the supervisor creates a hostile environment [6] in the workplace.

ted) (emphasis added); *accord Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir.1988).
*Earley*, 907 F.2d at 1080–81.

**5.** Title VII states that:
It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e–2(a)(1).

**6.** The Supreme Court emphasized that "the labels quid pro quo and hostile work environment are not controlling for employer-liability purposes" *Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. at 2261. After explaining the difference between quid pro quo and hostile work environment, the Supreme Court has stated that:
When we assume discrimination can be proved, however, the factors we discuss be-

See *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); See also *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

Rather than arguing that the plaintiff cannot establish a prima facie case of sexual harassment, Big B raises an affirmative defense against the plaintiff's claim (Doc. # 13, p. 8). Big B premises the success of its affirmative defense to vicarious liability upon the facts that (1) no adverse employment action was taken against the plaintiff, (2) the plaintiff unreasonably failed to take advantage of the opportunities provided by Big B, and (3) Big B exercised reasonable care to prevent and promptly correct the alleged sexually harassing behavior (Doc. # 13, pp. 8–9). Consequently, Big B argues that it is entitled summary judgment on the plaintiff's sexual harassment claim (Doc. # 13, p. 8). The plaintiff contends that the defendant cannot establish the elements of the affirmative defense (Doc. # 18, p. 4).

■ In *Faragher v. City of Boca Raton*, 118 S.Ct. at 2278–79, the Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." See also *Burlington Industries,*

*Inc. v. Ellerth, supra.* However, "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. at 2270. In the instant action, Big B is entitled to assert the affirmative defense established in *Faragher v. City of Boca Raton* and *Burlington Industries v. Ellerth* because the plaintiff did not suffer any tangible employment action.[7]

The Supreme Court has explained that: The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. at 2270. The Court of Appeals has commented on the affirmative defense established in *Faragher v. City of Boca Raton* and *Burlington Industries v. Ellerth*:

A court's assessment as to whether a defendant has proved this defense requires, first, an analysis of whether the employer has exercised reasonable care in preventing sexual harassing behavior. The court next directs its inquiry to

low, and not the categories quid pro quo and hostile work environment, will be controlling on the issue of vicarious liability. *Id.*, 118 S.Ct. at 2265. Therefore, for the purposes of determining whether Big B is vicariously liable for Hassett's alleged misconduct and raises an affirmative defense to the sexual harassment claim, the distinction between quid pro quo and hostile work environment is not controlling.

7. The Supreme Court defined a tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. at 2268. In the instant action, it is undisputed that no tangible employment action was taken (Doc. # 18). Upon receiving the plain-

tiff's complaint about Hassett's behavior, Berry and Foster informed the plaintiff that she did not have to transfer and that if she stayed at the same pharmacy, she would not experience such treatment again (Doc. # 14, Lunde Dep., p. 175; Foster Decl, ¶ 7). However, the plaintiff decided that she did not wish to be in the front of the store and requested a transfer (Doc. # 14, Lunde Dep., pp. 175, 193–194). Foster made arrangements for the plaintiff to be transferred to a store located one mile away on Coliseum Boulevard (Doc. # 14, Foster Decl., ¶ 8). Although the plaintiff was transferred, she retained her employment status and was compensated for the week during which the transfer was being effected—a week during which she did not work (Doc. # 14, Foster Decl., ¶ 8). Accordingly, the court finds that there is no genuine issue as to any material fact regarding the non-existence of tangible employment action in this case.

whether the employee made reasonably sufficient use of available avenues to put the employer on notice of the problem. Finally, the court refocuses on the employer to determine whether the employer or its authorized agent, after receiving notice of the harassment, took adequate steps to abate it and prevent its recurrence.

*Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1369 (11th Cir.1999).

To avoid liability, Big B must first prove that it exercised "reasonable care to prevent and correct promptly any sexually harassing behavior...". *Burlington Industries v. Ellerth,* 118 S.Ct. at 2270. The plaintiff does not dispute that Big B had in place an officially promulgated sexual harassment policy, one which it distributed to each of its employees[8] (Doc. # 14, Exs.7–9). The anti-harassment policy clearly sets forth Big B's policy of intolerance for sexual harassment and provides multiple procedures for the prompt resolution of complaints (Doc. # 14, Exs.7, 9).

The policy is both specific and detailed, and it allows the complainant to circumvent the supervisory chain of command (Doc. # 14, Exs.7, 9). Lunde acknowledged receipt of the Revco Handbook, which outlines the harassment policy, on 4 March 1997 (Doc. # 14, Lunde Dep., pp. 233–34; Ex. 8). She signed an acknowledgment form stating "I understand that it is my responsibility to read, become familiar with, and comply with the policies and procedures provided in the handbook" (Doc. # 14, Lunde Dep., Ex. 8).

■ These undisputed facts establish, as a matter of law, that Big B exercised reasonable care to prevent sexual harassment, as that term has been interpreted in the courts. This conclusion is buttressed by the opinion in *Faragher v. City of Boca Raton,* where the Supreme Court held that the employer failed to exercise reasonable care to prevent sexual harassment because it failed to disseminate its policy against sexual harassment and because the supervisors were "completely isolated from the City's higher management." *Faragher v. City of Boca Raton,* 118 S.Ct. at 2293.

The first prong of the affirmative defense in *Faragher/ Burlington Industries* also requires Big B to prove that it exercised reasonable care to respond to the sexual harassment. Pursuant to the Revco policy, in February of 1998, the plaintiff complained to Berry, the store manager, that Hassett had grabbed her arm (Doc. # 14, Lunde Dep., p. 149). In that meeting, the plaintiff asked Berry to speak to Hassett without informing him of the plaintiff's identity (Doc. # 14, Lunde Dep., p. 145).[9] In May of 1998, Berry asked the plaintiff about her welfare in the pharmacy, and she stated that she responded that things were "pretty good" (Doc. # 14, Lunde Dep., p. 143). Berry replied "that is good ... because we won't put up with any kind of sexual harassment" (Doc. # 14, Lunde Dep., p. 143).

Because the plaintiff assured Big B that things were "pretty good," it had no reason to know of continuing or exacerbated sexual harassment. Consequently, there were presumably no issues for Big B to address after that pivotal conversation. Under these circumstances, Big B's response (to do nothing beyond its initial reasonable attempts to prevent sexual harassment) was per se reasonable. The court finds that it is not unreasonable for Berry to conclude, on the plaintiff's assurance that "things were pretty good", that

---

**8.** Revco had a well-publicized policy against sexual harassment which specified the steps a victimized employee should take to alert the employer of harassment (Doc. # 14, Exs.7, 9). Specifically, the policy states that employees should report sexual harassment to their store manager, district manager, or regional staff member (Doc. # 14, Exs.7, 9). Alternatively, the employees may contact the Human Resources Office to notify the employer of any complaint of sexual harassment (Doc. # 14, Exs.7, 9).

**9.** The plaintiff has presented no evidence one way or the other on whether Berry took steps to correct Hassett's behavior. As such, the plaintiff has failed to raise a genuine issue of triable fact that Berry took no action.

the harassment had ceased and that no further action was necessary.

To succeed on the affirmative defense, Big B must also establish that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Industries v. Ellerth*, 118 S.Ct. at 2270. Although Big B adopted a sexual harassment policy which established multiple procedures for an employee to report and seek the elimination of sexual harassment, the plaintiff took advantage of only mechanism. Even then, when Berry later inquired of the plaintiff's welfare, the plaintiff decided to forego the opportunity to report the continued harassment (Doc. # 14, Lunde Dep., p. 143). The plaintiff admits that after this assurance to Berry, she never alerted anyone else at Big B of Hassett's inappropriate activities until after the 17 June 1998 incident.

> According to the Court of Appeals:
> Federal law has now attempted to correct the problem of workplace discrimination, but it cannot be done without the cooperation of the victims, notwithstanding that it may be difficult for them to make such efforts. When an employer has taken steps, such as promulgating a considered sexual harassment policy, to prevent sexual harassment in the workplace, an employee must provide adequate notice that the employer's directives have been breached so that the employer has the opportunity to correct the problem.

*Coates, supra*, 164 F.3d at 1366.

Big B contends that, by affirmatively assuring Berry that things were "pretty good," the plaintiff failed to make reasonably sufficient use of available avenues to put the employer on notice of the problem (Doc. # 14, p. 12). The plaintiff argues in response that it was reasonable for her not to pursue Big B's complaint mechanism because of her history of rape and incest (Doc. # 18, p. 5). She argues that "[w]ithin that context," she acted reasonably (Doc. # 18, p. 5). The plaintiff also contends that "[w]hen nothing happened [after she spoke to Berry], she became fearful" and "reasonably concluded that she would just have to cope as best she could" (Doc. # 18, pp. 4–5).

The court notes the inherent inconsistency in the plaintiff's own concept of reasonableness. Although the plaintiff argues that her lack of action was reasonable, she fails to explain why she assured Berry that the harassment ceased approximately one month after she initially complained of the harassment. Further, the plaintiff used the very mechanism established by Big B—a mechanism which she labeled as ineffective—when she complained about Hassett's touching of her body within approximately two months of her initial complaint about Hassett's grabbing of her arm. In fact, on 18 June 1998, the plaintiff reported Hassett's behavior to the same person, i.e., Berry, whom she alleged was doing nothing about the harassment (Doc. # 14, Lunde Dep., p. 173).

This court embraces the sensitivity to these issues expressed by the Court of Appeals:

> We are not unmindful of the enormous difficulties involved in lodging complaints about discrimination in the workplace, including complaints of sexual harassment. We also recognize the great psychological burden it places on one who is already the victim of harassment to require that person to complicate further his or her life with the ramifications, both legal and otherwise, of making a complaint.

*Coates*, 164 F.3d at 1366. While the plaintiff, a victim of sexual harassment, may legitimately feel uncomfortable discussing the harassment with her employer, that unpleasantness cannot excuse her failure to use the company's complaint mechanism or her obfuscation of the alleged harassment by stating that things were "pretty good". The plaintiff's own conduct contributes to Big B's satisfaction of its burden under the second prong of the *Faragher/Burlington Industries* affirmative

defense. See *Burlington Industries v. Ellerth*, 118 S.Ct. at 2270 (a demonstration of an unreasonable failure to use any complaint procedure provided by the employer "will normally suffice to satisfy the employer's burden under the second element of the defense").

Accordingly, the court concludes that the plaintiff's subjective fears of confrontation, unpleasantness or retaliation do not alleviate her duty under *Faragher v. City of Boca Raton* and *Burlington Industries v. Ellerth* to alert the employer to the allegedly hostile environment. For these reasons, the court finds that there is no genuine issue as to any material fact that Big B, the defending employer, established the affirmative defense to liability or damages of the plaintiff's sexual harassment claims. Accordingly, the court grants Big B's motion for summary judgment on the plaintiff's claim of sexual harassment.

## B. Causes of Action Based on State Law

The plaintiff's remaining claims are based on state law, i.e., claims of intentional infliction of emotional distress, invasion of privacy, and assault and battery (Doc. # 21, pp. 7–8). These claims are brought against Hassett only (Doc. # 21, pp. 7–8).

Because summary judgment is granted on the plaintiff's claims over which the court has original jurisdiction, namely those asserted pursuant to Title VII, there is no longer an issue in this case as to which the court may exercise federal subject matter jurisdiction.[10]

Under these circumstances, the court may exercise its discretion, pursuant to subsection 28 U.S.C. § 1367(c)(3),[11] to decline the exercise of supplemental jurisdiction over the plaintiff's state law claims. *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1568 (11th Cir.1994) (stating that "Section 1367(c) gives a court discretion to dismiss a supplemental claim or party when 'the district court has dismissed all claims over which it has original jurisdiction.' ").

The court declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims and orders that those claims be dismissed without prejudice, thereby affording the plaintiff the opportunity to pursue her state law claims in state court..[12]

10. The plaintiffs have not alleged federal jurisdiction pursuant to diversity of citizenship, 28 U.S.C. § 1332. The parties have not asserted any cause for the court to believe that diversity jurisdiction exists. In fact, the court questions the existence of diversity jurisdiction because the parties may from the same state, i.e., the plaintiff and Hassett worked at the pharmacy located in Montgomery, Alabama.

11. Section 1367(c)(3) of Title 28 provides that:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—.

\* \* \* \* \* \*

(3) the district court has dismissed all claims over which it has original jurisdiction,

12. The court is aware that "[t]he running of a state statute of limitations is an important factor for the district court to consider when deciding whether to dismiss a pendent claim." *Edwards v. Okaloosa County*, 5 F.3d 1431, 1433 (11th Cir.1993) (citations omitted) (opinion modified on denial of rehearing), 23 F.3d 358 (11th Cir.1994). The plaintiff's state law claims are governed by the two-year statute of limitations found in Section 6–2–38 of the Code of Alabama. Ala.Code § 6–2–38 (1998). The plaintiff contends that Hassett began to harass her from September of 1997 to June of 1998. However, the plaintiff's state law claims against Hassett involve alleged incidents of physical contact which occurred after September of 1997, i.e., Hassett allegedly pushed up against the plaintiff's body in December of 1997 and allegedly touched the plaintiff's buttocks in June of 1998. As such, the dismissal of the plaintiff's claims based on state law should not present a statute of limitations problem. However, the court invites the plaintiff to move for reconsideration of dismissal of their pendent state claims if "dismissal of their state claims presented a statute of limitations problem." *Roper v. Edwards*, 815 F.2d 1474, 1478 (11th Cir.1987).

## IV. CONCLUSION

The court's decision today is an example of the rare disconnect between conduct that is proscribed and conduct which overcomes the proscription. Such is the consequence of the application of accepted legal principles which leave unpunished—and possibly unabated—conduct in the workplace which has earned the legislative and judicial condemnation that has so often been applied.

In view of the foregoing, the defendants, especially Hassett, should not construe the court's decision as a sanction of the conduct about which the plaintiff now complains. To be sure, the plaintiff was obliged to pursue her complaint with at least the same vigor as Hassett apparently pursued her. The court has not turned a blind eye, however, to the workplace conditions implicit in the facts underlying the plaintiff's complaint, and the court urges the corporate defendant to remain vigilant in its eradication.

For the reasons articulated in this order, it is the ORDER, JUDGMENT, and DE-CREE of this court that:

1. The motion for summary judgment the motion for summary judgment filed by the defendants, Big B, Inc., and Robert Hassett, on 22 July 1999 (Doc. # 12 ) be GRANTED as to all of the plaintiff's claims based on federal law;

2. The plaintiff's remaining claim based on state law should be DISMISSED, without prejudice, for lack of federal jurisdiction.