LIPEZ, Circuit Judge,
dissenting.
Three propositions underlie the decision of the majority to affirm summary judgment for IBC: (1) the terms of the sexual harassment policy that IBC chose to adopt should not be applied as written, (2) with the policy cast aside, Chaloult’s unreasonable failure to take advantage of any preventive or corrective opportunities provided by IBC’s sexual harassment policy (the second element of the Faragher-Ellerth affirmative defense) becomes the decisive factor in determining that IBC exercised reasonable care to prevent and correct promptly sexually harassing behavior (the first element of the Faragher-Ellerth affirmative defense), and (3) there is no genuine issue of material fact about whether Anderson was aware of the sexual harassment of Chaloult.
I disagree with each of these propositions. Therefore, I respectfully dissent.
I.
IBC’s sexual harassment policy states without qualification:
If a supervisor becomes aware of any violation or possible violation of the EEOC guidelines, the incident should be reported immediately to the human resources manager or plant general manager. ... Supervisors have an affirmative duty to keep their work area free from sexual harassment of any kind and shall take appropriate steps to prevent and eliminate such harassment.
Although the majority acknowledges that Anderson was a supervisor, it insists that his awareness of sexual harassment could not be attributed to IBC because Chaloult also was a supervisor on the same level as Anderson, and both reported to Francoeur, the alleged harasser. The majority also notes that no one in management at Francoeur’s level or above had knowledge of the harassment. Therefore, according to the majority, IBC should be entitled to the affirmative defense.
The majority has added its own gloss to the company’s clearly stated policy. As drafted, the policy did not qualify Anderson’s obligations under the company’s sexual harassment policy simply because he and Chaloult were supervisors at the same employment level. Likewise, as drafted, the policy did not qualify Anderson’s obligations because the alleged harasser was the immediate supervisor of both Anderson and Chaloult.
Indeed, that policy demonstrates that IBC knew how to distinguish between a particular category of supervisor and supervisors generally. The “Awareness” section of the company’s sexual harassment policy reads in its totality as follows:
*78 II. Awareness
A. Supervisors must be sensitive to the problem of sexual harassment.
B. Employees shall be encouraged to report an incident of sexual harassment to their supervisor.
C. If a supervisor becomes aware of any violation or possible violation of the EEOC guidelines, the incident should be reported immediately to the human resources manager or plant general manager.
D. Supervisors have an affirmative duty to keep their work area free from sexual harassment of any kind and shall take appropriate steps to prevent and eliminate such harassment.
(emphases added).
Pursuant to this policy, employees experiencing harassment are specifically “encouraged to report an incident of sexual harassment to their supervisor.” However, supervisors generally “must be sensitive to the problems of sexual harassment,” and must “report immediately to the human resources manager or plant general manager” any violation or possible violation of the EEOC guidelines. They also “have an affirmative duty to keep their work area free from sexual harassment of any kind and shall take appropriate steps to prevent and eliminate such harassment.”
Anderson understood that these obligations of a supervisor to deal with sexual harassment applied to him. As the majority points out, Anderson confirmed at his deposition that “it is his understanding that if supervisors receive a complaint of sexual harassment, they are supposed to report it right away.” Although Chaloult never said to Anderson “I am being sexually harassed by Francoeur and I want you to help me,” she alleges that she did complain to Anderson about Francoeur’s conduct and she asserts that Anderson was aware of many of her encounters with Francoeur independently of any complaint by her. Yet the majority insists that Anderson had no legal obligation to do anything — and the company thus could not be found to have acted unreasonably — because IBC’s policy requires more than Title VII demands. The majority simply ignores as improvident or legally irrelevant IBC’s policy choice to imbue all supervisors with the responsibility for reporting and preventing sexual harassment.[12]
Other courts have agreed that a company’s stated sexual harassment policy is critical to an evaluation of the question posed by the first element of the affirmative defense — whether “the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior.” Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In Clark v. United Parcel Serv., Inc., 400 F.3d 341 (6th Cir.2005), the court rejected the employer’s argument that, as a matter of law, supervisors who “were not high enough in the *79 company hierarchy and had no authority to control [the harasser]” had no duty to convey their knowledge of harassment to higher management. Id. at 350. The court observed that “[t]his argument might have merit but for the fact that UPS itself has, through its sexual harassment policy, placed a duty on all supervisors and managers to ‘report[] incidents of sexual harassment to the appropriate management people.’ ” Id. (emphasis in original); see also Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1364 (11th Cir.1999).[13]
The majority justifies its decision not to enforce IBC’s policy as written on the ground that to do so would “set a legal standard different from the Supreme Court’s reasonableness approach in Faragher-Ellerth.” According to the majority, allowing knowledge of sexual harassment by “any employee bearing the title supervisor” to be sufficient to attribute knowledge to the employer is inconsistent with the Faragher-Ellerth affirmative defense, which “provides incentives for employers to develop sexual harassment reporting policies and to educate employees about and promote compliance with such procedures.”
The majority misapprehends Title VII’s “basic policies of encouraging forethought by employers and saving action by objecting employees.” Faragher, 524 U.S. at 807, 118 S.Ct. 2275. The animating principle of Title VII is “not to provide redress [for employment discrimination] but to avoid harm.” Faragher, 524 U.S. at 806, 118 S.Ct. 2275. By involving supervisors at all levels in the reporting and prevention of sexual harassment, IBC’s sexual harassment policy seeks comprehensively to avoid harm. If the failures of a particular supervisor in the reporting of sexual harassment belie the promise of that comprehensive policy, a court should not forgive the failure of the supervisor by declaring the policy too ambitious.
Not surprisingly, I can find no other cases in which an employer prevailed on the first element of the Faragher-Ellerth affirmative defense because a court thought its sexual harassment policy imposed a broader reporting obligation than the law required. If the majority believes that IBC’s policy states the reporting responsibilities of supervisors too broadly to justify vicarious liability, IBC should rewrite that policy, not the court.
II.
I agree with the majority that there may be instances in which there is a relationship between the two prongs of the Faragher-Ellerth affirmative defense. That is, facts relevant to an assessment of the unreasonableness of the employee in not taking advantage of any preventive or corrective opportunities afforded by a company’s sexual harassment policy may also be relevant to an' assessment of the reasonable care taken by an employer to prevent and correct promptly sexual harassment. Some of the cases cited by the majority *80 present such scenarios. For example, in Nurse “BE” v. Columbia Palms W. Hosp. Ltd. P’ship, 490 F.3d 1302 (11th Cir.2007), an employee explicitly “requested that [her supervisor] not report the incident [of sexual harassment] and premised the complaint on [the supervisores promise of confidentiality.” Id. at 1310. Similarly, in Hardage v. CBS Broad., Inc., 427 F.3d 1177 (9th Cir.2005), the employee told the supervisor with whom he had discussed the allegedly harassing behavior that he wanted to “handle the situation by himself.” Id. at 1186. In Nurse “BE” and Hardage, the employee’s conduct — telling the supervisor not to address the harassment — appropriately affected the court’s inquiry into the reasonableness of the measures taken by the employer. However, those cases are inapplicable here because there the employees took affirmative steps to thwart their supervisors’ compliance with the reporting requirements. Here, Chaloult merely failed to act. That is often the case in sexual harassment cases for many different reasons. That failure has no relationship to Anderson’s responsibilities as a supervisor if he was aware of the harassing conduct by Francoeur.
The majority sees it differently. With its disregard of IBC’s sexual harassment policy, it seeks to minimize the importance of Anderson’s knowledge of Francoeur’s conduct notwithstanding the obligation to report imposed on him by IBC’s policy, and it makes Chaloult’s failure to use the complaint procedures of the company the decisive factor in deciding that the company acted reasonably. In effect, the majority double counts Chaloult’s failure to report sexual harassment to higher management (once in each element of the affirmative defense). It gives little or no weight at all to Anderson’s awareness of Chaloult’s encounters with Francoeur. For this approach, the majority cites language from Reed v. MBNA Mktg. Sys., Inc., 333 F.3d 27 (1st Cir.2003), where we said that the Supreme Court “certainly knew [ ] its [Faragher-Ellerth ] regime necessarily requires the employee in normal circumstances to make [the effort to report sexually offensive conduct] if the employee wants to impose vicarious liability on the employer and collect damages under Title VII.” Id. at 35 (emphasis in original).
This statement is merely an explanation of why there is a second element of the Faragher-Ellerth affirmative defense that focuses on the reporting responsibilities and conduct of the employee. That statement did not mean, because it could not mean, that the unreasonable failure of the employee to report sexual harassment trumps the failure of the employer to exercise reasonable care to prevent and correct promptly sexual harassment in a case where the employer has knowledge of the sexual harassment independently of any reporting by the employee. It is only because of the majority’s insistence that Anderson’s knowledge of Francoeur’s treatment of Chaloult cannot be imputed to IBC under element one of the Faragher-Ellerth affirmative defense that the majority can rule as a matter of law that IBC prevails on that defense.
III.
Near the end of its opinion, the majority qualifies its insistence that Anderson’s knowledge of Francoeur’s treatment of Chaloult cannot be imputed to IBC. The majority says that “[e]ven if all of Anderson’s knowledge were imputed to IBC, this would not make IBC’s actions unreasonable, since it is clear that Anderson did not consider himself on notice of harassment.” I do not understand how the majority can ascribe such disposi *81 tive significance to Anderson’s alleged insensitivity to sexual harassment. Chaloult describes a number of encounters with Francoeur that Anderson admittedly witnessed. She also describes other encounters which she says Anderson was aware of and he denies it. Those encounters are central to my view that we must vacate the district court’s grant of summary judgment. Taking the facts in the light most favorable to Chaloult — as we must— Anderson was aware of a series of episodes that a jury could view as sexual harassment. Even accepting only what Anderson acknowledges he heard and observed, a jury could still find that he should have reported the conduct to IBC and that his failure to do so is properly imputed to the company. The majority looks at those same encounters and sees grounds for affirming summary judgment.
It does so by the misapplication of the summary judgment standard. That misapplication includes an inappropriate effort to undermine Chaloult’s credibility. The majority notes that Chaloult’s contemporaneous diary of Francoeur’s comments did not include all of the incidents alleged in the complaint; that she conceded in a deposition that her work deteriorated after she was put on notice that her position could be eliminated; and that she acknowledged her displeasure with her job for reasons unrelated to the alleged sexual harassment. Although these details are fair game for a trial, they have no place in the summary judgment analysis, where we are not permitted to draw negative inferences about Chaloult’s credibility. That is a job for the jury at trial.
Then there is the majority’s curious treatment of Chaloult’s insistence that Anderson knew of some incidents that he does not acknowledge. For example, Chaloult alleges that Anderson and a few maintenance people were in the area when Francoeur told her that he was going to come to her house to show her what “fucking was about.” The obvious import of Chaloult’s statement is that Anderson overheard the remark. In response, the majority observes that Anderson says that he did not hear those comments. The majority apparently accepts Anderson’s denial. In so doing, the majority distorts the summary judgment standard that requires us to take all facts in the light most favorable to Chaloult.
Finally, there is the majority’s odd treatment of undisputed portions of the summary judgment record. It is undisputed that Anderson heard Francoeur: remark that women who rode motorcycles enjoyed sex from the backside after he learned that Chaloult had recently taken a motorcycle trip; make an inappropriate noise while Chaloult ate an eclair and another supervisor “asked how far can it go”; state that he had heard a radio program that discussed “spread points” between breasts; and ask other employees to measure their “spread points.” With respect to this spread points incident, the majority recounts in detail Anderson’s version, including his insistence that he “read nothing into it because we all had a chuckle about it.” The majority then says that “Chaloult has not called this testimony into question,” without explaining how or why Chaloult has to challenge Anderson’s statement that he did not view this particular conduct as sexual harassment.
Anderson’s dismissal of such conduct as “guy talk” and funny incidences that provoked laughter may only mean that he was a company supervisor who did not understand the nature of sexual harassment. Contrary to the inapt observation of the majority that Chaloult never “used the term ‘sexual harassment’ in her conversations with Anderson about Francoeur,” Chaloult had no obligation to explain to *82 Anderson the significance of what he was seeing. The testimony about those encounters described by Chaloult should have been heard by a jury charged with determining whether Anderson was placed on notice of sexual harassment, which would then be imputable to IBC under the terms of its own sexual harassment policy. Therefore, I respectfully dissent from the decision of the majority to terminate this case.

. In footnote 9 of its opinion, the majority states that it is not saying that Anderson had no duty to report harassment under IBC’s policy. Rather, the majority insists that Anderson had no duty to report Francoeur's harassment of Chaloult under the circumstances of this case. Those circumstances include two indefensible legal propositions put forth by the majority. First, as explained above, the majority says that Anderson's status as a supervisor under the IBC policy does not matter here because Chaloult was a supervisor at the same level as Anderson and because the harasser, Francoeur, was the supervisor for both of them. Second, as I explain more fully in Parts II and III of the dissent, the majority says that Anderson's knowledge of Francoeur’s treatment of Chaloult did not constitute awareness of sexual harassment as a matter of law.

. In Coates, the court held that when an employer’s sexual harassment policy designates the people responsible for reporting misconduct, the company “itself answered the question of when it would be deemed to have notice of the harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures.’’ 164 F.3d at 1364. The majority correctly notes that the court in Coates was considering whether an employee had sufficiently reported harassment to the company and did not address the issue of whether a company was liable for a co-worker supervisor's knowledge. Even with this factual distinction, the central point remains the same — a company’s own harassment policy answers the question of who within the company is responsible for reporting and responding to known incidences of harassment.